DARRIL WAYNE UTLEY *v.* STATE OF INDIANA.

[No. 271S30.  Filed May 4, 1972.]

*John G. Bunner,* of Evansville, for appellant.

*Theodore L. Sendak,* Attorney General, *Robert F. Colker,* Deputy Attorney General, for appellee.

DeBruler, J.—This is an appeal from a conviction for jail-breaking in violation of I.C. 1971, 35-21-8-1, being Burns § 10-1809, in a trial without jury in the Vanderburgh Circuit Court. Appellant was sentenced to one year on the State Farm.

Appellant was sentenced to one year in the Vanderburgh County Jail under a work-release program on April 8, 1970. On April 20, 1970, appellant's probation officer, Willard Walls, arranged over the phone to have appellant released from jail in order to seek employment. Appellant was to return at noon. Shortly after noon appellant talked to Walls on the phone and requested more time. Walls gave him until 4:00 p.m. and then informed the jail of the new arrangement. Appellant agreed with Walls to return at 4:00 p.m. Appellant did not return and on August 14, 1970, he was picked up at the Henderson County, Kentucky, Jail by the Vanderburgh County police and returned to jail there.

Appellant's first contention is that the trial court erred in overruling appellant's motion to quash the affidavit. The grounds for the motion were that the "facts stated in said amended affidavit do not constitute a public offense" and "said amended affidavit does not state the offense charged with sufficient certainty". The applicable statute is § 10-1809, *supra,* which at the time in question read:

> "Any person being lawfully confined in any county jail or any prison of this state who while under lawful detention shall escape therefrom, or from the custody of the officer lawfully in charge of such person, shall be deemed guilty of jail breaking. . . ."

The affidavit read as follows:

> "that DARRIL WAYNE UTLEY on or about the 20th day of April A.D., 1970, at said County and State as affiant verily believes was lawfully confined in the *constructive custody* of the Sheriff of Vanderburgh County in the City of Evans-

ville, State of Indiana, pursuant to a valid commitment of the crime of Theft Under $100.00 in Vanderburgh County on April 8, 1970; and that said DARRIL WAYNE UTLEY did, on the 20th day of April, 1970, unlawfully escape from the *constructive custody* of said Sheriff by failing and refusing to return to the Vanderburgh County Jail at the required time while said DARRIL WAYNE UTLEY was participating in the Work-Release Program operated for certain of the inmates of said jail." (Emphasis added.)

Appellant argues that by adding the word "constructive" to the statutory word "custody" the appellee attempted to create an additional element of the offense not provided by the Legislature. Appellee argues the word constructive is mere surplusage.

Certain basic principles are applicable here. The Legislature has the sole power to define crimes in this State. Indiana Code 1971, 1-1-1-2, being Burns' § 9-2401; *Durrett* v. *State* (1966), 247 Ind. 692, 219 N. E. 2d 814; *Knotts* v. *State* (1963), 243 Ind. 501, 187 N. E. 2d 571. Therefore, although the prosecutor is not required to charge an offense in the exact words of the statute, he does not have the power to add elements to an offense or make punishable that which was not intended to be so by the Legislature. Indiana Code 1971, 35-1-23-4 and 35-1-23-9, being Burns' §§ 9-1104 and 9-1105; *Wasy* v. *State* (1954), 234 Ind. 52, 123 N. E. 2d 462; *State* v. *Price* (1934), 206 Ind. 498, 190 N. E. 174; *Stropes* v. *State* (1889), 120 Ind. 562, 22 N. E. 773. The issues then are, what is the meaning and scope of application of the word "custody" as used in the statute, and did the addition of the word "constructive" impermissibly broaden the offense.

"Custody" is the care and keeping of anything. *Horlock* v. *Oglesby* (1965), 141 Ind. App. 690, 210 N. E. 2d 56; BLACK'S LAW DICTIONARY 460 (4th ed. 1951). In the area of criminal law the word "custody" is commonly used in reference to two different situations. One is where the person is under actual, immediate, and physical restraint such as when a person is arrested, confined in a prison, on a work

gang supervised by a guard in the immediate vicinity, being taken by a guard to the hospital, etc. The second is where the person has *legal* restraints upon his freedom but is not subject to actual supervision by a guard in the immediate vicinity, *e. g.,* being on parole, working under a work-release program, etc. *Jones* v. *Cunningham* (1963), 371 U. S. 236, 83 S. Ct. 373, 9 L. Ed. 2d 285; WEBSTER'S NEW INTERNATIONAL DICTIONARY 650, (2d ed. 1942); BLACK'S LAW DICTIONARY, *supra.* Since the word "custody" by itself is ambiguous, attention is usually called to the above distinction by using the phrase "actual custody" in reference to the former and "constructive custody" in reference to the latter. *Jones* v. *Cunningham, supra;* WEBSTER'S, *supra;* BLACK'S *supra.* In the area of criminal statutes punishing escape from jail, the crucial difference between the two situations is that an escape from "actual custody" poses the threat of violence and injury due to the fact that the one supervising the prisoner will attempt to resist the prisoner's doing anything other than what the prisoner was ordered to do. In the case of "constructive custody", such as when a prisoner is allowed to leave the jail to go out and seek a job, the danger of violence is missing because there is no supervisor to resist the prisoner's doing exactly what he pleases.

Since the word "custody" by itself is ambiguous we must construct § 10-1809, *supra,* to determine what the Legislature intended by using that word. In making this determination this Court must be guided by the well-settled rule of judicial construction that criminal statutes must be strictly construed against the State and in favor of the accused. *Coleman* v. *State* (1970), 253 Ind. 627, 256 N. E. 2d 389. In practical effect this rule means that this Court, when faced with statutory language having two fairly well-settled meanings, will deem the Legislature to have intended the meaning which gives the narrowest range of applicability to the statute. The application of this rule leads us to the conclusion that for purposes of the interpretation of § 10-1809,

we must construe "custody" to mean only "actual custody" and not to include the much broader concept of "constructive custody". This construction is supported by the fact that where the Legislature did explicitly confront the issue of the penalty for "escaping" from a *state* work-release program, the Legislature did not make it punishable as a crime but merely provided that the prisoner should be returned to prison to complete his sentence. Indiana Code 1971, 11-7-9-11 and 11-7-9-4, being Burns §§ 13-149 and 13-143.

Given our interpretation of § 10-1809, the prosecutor was not free to broaden the statutory meaning by adding "constructive" to the word "custody" and appellant's motion to quash should have been granted.

The appellee cites the case of *State* v. *Rardon* (1943), 221 Ind. 154, 46 N. E. 2d 605. In that case the defendant had been sentenced to the State Prison at Michigan City. While in that prison appellant had been transferred to the prison farm in Porter County operated by the State Prison. Appellant left the farm without permission or authority of the officers in charge and he was charged with escape from the State prison, under I.C. 1971, 35-1-96-9, being Burns § 10-1807. The trial court granted appellant's motion to quash the affidavit and the State appealed that ruling. The question on appeal was whether that affidavit stated facts constituting a public offense under § 10-1807, and whether it stated them with sufficient certainty.

Burns § 10-1807, read in pertinent part:

"Whoever, being a convict confined in any prison of this State escapes therefrom, shall. . . ."

The affidavit read:

"Edgar Wetzel swears that Manford Rardon late of the County and State aforesaid, on or about the 30th day of June, A.D., 1941, was then and there, at and in said County and State a convict confined in the prison farm of the Michigan City Penitentiary, which prison farm is situated in Porter County, duly committed to said prison for the

crime of second degree burglary, from the County of Carroll in said State, and did then and there, while so confined on said state farm and prison, feloniously escape and break away from prison, contrary to the form of the Statute in such cases made and provided, and against the peace and dignity of the State of Indiana."

This court held that the charge was sufficiently certain and that the deviation of the language in the affidavit from that in the statute was not fatal. It is in that context that we must read the portion of Rardon relied on by appellee:

"When a person is ordered confined to a given prison that order of confinement does not mean that that person must be kept within a given four walls but it does mean that that person is confined for restraint upon his freedom by the authorities of that institution, and if the proper authorities determine that he may leave the four walls of the institution for the purpose of performing some duty or accomplishing some task given him, and while outside the institution walls he escapes, he is guilty of escape from the correctional institution to which he was committed and any judgment committing a given defendant to the Indiana State Prison must be read as if it states that he is subject to be transferred to another penal institution by the Board of Public Welfare under the power granted said Board by Acts 1941, ch. 179, p. 536, subsection (n) of § 3."

The issue of "actual" versus "constructive custody" never arose in that case. The Court held only that when the State charged the defendant was confined on the prison farm of the Michigan City Penitentiary that was sufficient to charge defendant with being confined in a state prison, under § 10-1807. The Court treated the penal farm as an integral part of the state prison.

Appellant's other contention is that there was insufficient evidence to sustain the finding of guilty. In reviewing the allegation of insufficient evidence this Court will not weigh the evidence nor resolve questions of credibility of witnesses, but will look to that evidence and the reasonable inferences therefrom which support the finding of

the trial court. *Asher* v. *State* (1969), 253 Ind. 25, 244 N. E. 2d 89. The conviction will be affirmed if from that viewpoint there is evidence of probative value from which the trier of fact could reasonably infer that the appellant was guilty beyond a reasonable doubt. *Smith* v. *State* (1970), 254 Ind. 401, 260 N. E. 2d 558.

Under § 10-1809, the appellee had the burden of proving that: (1) appellant had been lawfully confined in a jail or prison, (2) while under such lawful detention, (3) appellant escaped from the custody of the officer lawfully in charge of such person.

It is clear that while appellant was out looking for work he was not in the custody of the Sheriff, within the meaning of § 10-1809. Appellant was under no supervision by any one at all, much less an agent of the Sheriff. Therefore there was no supervisor who would have been in a position to resist appellant's efforts to violate the conditions of his release. The Sheriff's Department had no idea where appellant was going; they merely made entries in their logbooks reflecting what they were told by the probation officer who was not in any way connected with the Sheriff's Department. We think this evidence was insufficient to show appellant was in the custody of the Sheriff of Vanderburgh County within the meaning of Burns' § 10-1809.

In addition, there was insufficient evidence that appellant "escaped" within the meaning of § 10-1809. In a criminal prosecution for escape from jail or prison the appellee is required to prove the element of mens rea, *i. e.*, that the prisoner intentionally and without authority left the custody of his jailor. *Noble* v. *State* (1967), 248 Ind. 101, 223 N. E. 2d 755; *Roark* v. *State* (1955), 234 Ind. 615, 130 N. E. 2d 326; *Byassee* v. *State* (1968), 251 Ind. 114, 239 N. E. 2d 586. There is no such evidence in this case. On April 20, 1970, appellant was released from jail to seek employment. There is nothing in the record to show any geographical limits to that

search. Appellant failed to return at the agreed upon time and he was found on August 14, 1970, in the Henderson, Kentucky Jail. There was no evidence of how appellant got to the Henderson, Kentucky Jail or even what he was doing there. Appellant could have been in Henderson, Kentucky, on April 20, 1970, looking for a job and been arrested, and held there until picked up by the Vanderburgh County police. If that were the case appellant did not intentionally refuse to return to the Vanderburgh County Jail. This case differs from *Zimmer* v. *State* (1969), 247 N. E. 2d 195, where the prisoner used a gun to escape from the ward at Central State Hospital. The Court held that though there was no evidence in the record of appellant actually leaving the grounds, the fact that she used force to leave the ward and was later apprehended in Missouri was sufficient to show the escape. Here there was no evidence at all of the circumstances under which appellant failed to return to jail and ended up in the Henderson, Kentucky Jail. We hold there was insufficient evidence of the mens rea or intent required to prove "escape". Judgment reversed and appellant ordered discharged.

Arterburn, C.J., Givan, and Prentice, JJ., concur; Hunter, J., dissents without opinion.

NOTE.—Reported in 281 N. E. 2d 888.