THOMAS LEROY DOWNS *v.* STATE OF INDIANA.

[No. 276S45. Filed December 15, 1977.
Rehearing denied February 22, 1978.]

344

*Michael J. McDaniel,* of New Albany, for appellant.

*Theodore L. Sendak,* Attorney General, *Wesley T. Wilson,* Deputy Attorney General, for appellee.

PIVARNIK, J.—Appellant Downs was convicted of second-degree murder at the conclusion of a jury trial in Clark Circuit Court on August 13, 1975. He was sentenced to imprisonment for fifteen to twenty-five years.

The evidence at trial revealed that appellant, who was the chief of the New Albany Police Department, was separated from his wife at the time of the murder in question. On the evening of March 28, 1974, appellant wanted to meet his wife at his office. She and appellant's daughter, however, were taken by Mrs. Downs' sister, Ruby Rock, to the home of appellant's son in Clarksville, Indiana. Upon learning this, appellant went to the home of his son in Clarksville and confronted those present, carrying three guns. An argument began, during which appellant tore a telephone from the wall and made threats of violence. Mrs. Downs, appellant's daughter, and Ruby Rock went outside, followed by appellant. Appellant repeated his request that his wife and daughter return home with him, to which Ruby Rock replied, "No, no more! She's not ever goin' home." Appellant told Mrs. Rock that he would shoot her. Mrs. Rock turned her back on appellant, saying "Shoot, damn you, shoot!" Appellant did so, firing several shots which killed Mrs. Rock. He then fired at his wife, severely wounding her. Indicted for first-degree murder and assault and battery with intent to kill, appellant filed a plea of not guilty by reason of insanity.

Downs presents six arguments for our review in this appeal: (1) that the court erred in denying his motion for a mistrial, based on the allegedly prejudicial and inflammatory testimony of a deputy prosecuting attorney; (2) that the court erred in denying his motion for a directed verdict at the close of the state's case; (3) that the state failed to prove his sanity; (4) that the state's tendered instruction

on the definition of malice was incorrect and should not have been given; (5) that a state's tendered instruction on the insanity defense was erroneously given; (6) that his motion for a suspended sentence should not have been overruled, because the applicable statute for these motions is unconstitutional.

I.

Samuel Gwin, a deputy prosecutor, testified as to statements made by appellant to a group in the Clarksville Police Station which included police officers, the mayor and assistant police chief of New Albany, and himself. Gwin was asked, based upon his experience in criminal law, what he considered the purpose of appellant's narrating such an account to be. He answered, "To instigate a defense of self-defense." Defense counsel objected, and moved to strike this answer. The trial court then struck Gwin's statement and admonished the jury to disregard it. The state protested the court's ruling to no avail, and the court asked defense counsel whether an instruction to the jury to disregard Gwin's statement would be sufficient. Defense counsel asked the court to show the answer stricken from the record, and the court agreed. Defense counsel then asked that the prosecutor be admonished not to pursue this line of questioning, and the court complied with this request. Appellant made a motion for mistrial with relation to Gwin's statement, which motion was denied.

The decision to grant or deny a mistrial lies in the sound discretion of the trial court, and is reviewable solely on the question of abuse thereof. *Bradberry* v. *State,* (1977) 266 Ind. 530, 364 N.E.2d 1183, 1187. Further, it is ordinarily assumed that a jury will obey the trial court's admonition that the objectionable testimony was improper and should be disregarded, and a prompt admonition is thus normally sufficient to protect the rights of a defendant. *DeHority* v. *State,* (1939) 215 Ind. 390, 19 N.E.2d 945. We do not think that the prejudicial impact of Gwin's statement in

this case was so great as to require a remedy as serious as a mistrial, considering the admonitions given by the court and the striking of the testimony from the record. There was no error in denying appellant's motion for a mistrial.

We do note that although the trial judge's action in over-ruling the motion for mistrial was not "an abuse of discretion," he also would have been clearly warranted in granting the motion. Guidelines for the determination of the adequacy of striking improper testimony and admonishing the jury, as opposed to declaring a mistrial, were set forth in *White* v. *State*, (1971) 257 Ind. 64, 272 N.E.2d 312. That case has been cited by this Court many times since, and those guidelines by now should be well ingratiated in the minds of trial prosecutors. Among those guides were two that, in the main, occasioned the reversal of the *White* case: whether the statement was volunteered by the witness and whether there had been deliberate action on the part of the prosecution to present the matter to the jury, and the standing and experience of the person giving the objectionable testimony.

It is difficult, in this case, to conclude that the improper question and answer were other than deliberate and improperly motivated. It does not appear that the witness was possessed of any relevant information that could not have been produced by other witnesses; and our Code of Professional Responsibility, notably Disciplinary Rules 5-101(B), 5-102, and 7-106(C)(7), address themselves to the propriety of counsel testifying as a witness.

## II.

At the close of the state's case, appellant moved for a directed verdict. This motion was denied, and appellant then introduced evidence in his case-in-chief. Appellant's action in going forward with his evidence at this point in time constituted a waiver of any possible error in the denial of his motion for a directed verdict. *Parker*

v. *State,* (1976) 265 Ind. 595, 358 N.E.2d 110, 113; *Murphy* v. *State,* (1976) 265 Ind. 116, 352 N.E.2d 479, 485.

### III.

Appellant argues that the state failed to prove his sanity beyond a reasonable doubt. Rather, appellant claims that both witnesses to the occurrence in question "testified as to the insanity of the defendant," and also that "the uncontroverted evidence in the state's case-in-chief is susceptible to only one inference, that is that the appellant acted in sudden heat and passion based upon more than sufficient provocation to engender such passion."

When a defendant enters a plea of not guilty by reason of insanity, the burden of proving sanity beyond a reasonable doubt is on the state. *Montague* v. *State,* (1977) 266 Ind. 51, 360 N.E.2d 181, 187; *Johnson* v. *State,* (1970) 255 Ind. 324, 328, 265 N.E.2d 57, 59. When reviewing the sufficiency of the evidence supporting the conclusion by the trier of fact that the defendant was sane, we treat the issue like other questions of fact. *Montague, supra.* This court does not judge the credibility of witnesses nor weigh evidence, but rather looks to the evidence most favorable to the state and the reasonable inferences to be drawn from that evidence. If there is substantial evidence of probative value to support the conclusion of the trier of fact, that conclusion will not be overturned. *Maxey* v. *State,* (1976) 265 Ind. 244, 353 N.E.2d 457, 459.

The "testimony of insanity" which appellant relies on here is that of the two witnesses to the shooting: his daughter Lois Downs, and one Karen Gibson. Lois Downs testified that there was something wrong with her father's mind and that she had never seen him as he looked the day of the killing. Her testimony on appellant's alleged insanity was that, "I would have to say insane, cause I would think anybody that would murder would have to be insane." Thus, this

witness considered appellant insane because she considered all murderers insane. Karen Gibson's testimony on appellant's alleged insanity was that, "I thought that after the shooting I thought that he was insane, but not before the shooting, he wasn't insane." The import of this testimony, then, was that appellant was sane through the time he shot Ruby Rock. Karen Gibson had previously testified to the effect that appellant knew where he was the evening in question, recognized everyone present, was deliberate in his actions, and spoke purposefully. Other evidence of appellant's sanity is the testimony of Officer Kenneth Barnes, who arrested appellant and was of the opinion that he appeared "normal" at that time. Finally, appellants own testimony of the incident belies his insanity theory. He testified that Ruby Rock scuffled with him and provoked him, apparently trying to present the theory that he killed her because she presented some danger to him. In sum, the opinion and observation evidence on the question of sanity is conflicting. Looking at the evidence most favorable to the state, we find substantial evidence of probative value that appellant was sane at least through the time of the shooting.

Appellant's "heat of passion" or "provocation" argument is apparently based on Ruby Rock's protective behavior toward appellant's wife and daughter prior to the shooting, and her statement, "Shoot, damn you, shoot," immediately before the act. There is ample evidence in this case that it was appellant's deliberate verbal threats and threatening behavior with guns which caused Ruby Rock to act as she did, rather than vice-versa. This argument is thus simply an invitation to this court to weigh the evidence, which we will not do. Further, it is a settled rule of law that mere words do not constitute provocation which will reduce an unlawful killing from murder to manslaughter. *Warren* v. *State*, (1963) 243 Ind. 508, 188 N.E.2d 108.

## IV.

The next alleged error is the trial court's giving of an instruction on the definition of malice which was tendered by the state. This instruction's language which was objected to by appellant was as follows:

"Malice, therefore may be implied from any deliberate and cruel act against another, however sudden."

Appellant argues that this statement to the jury was misleading in that it implies malice from a deliberate and cruel act, even though there was not time to deliberate on such act. This argument thus confuses the separate and distinct concepts of *malice* and *premeditation*. These are both elements of the charge of first-degree murder, of which appellant was charged but not convicted. The court otherwise correctly instructed on the element of premeditation. There is thus no error here.

## V.

Appellant next challenges the state's tendered instruction on the insanity defense, which was given by the court. This instruction stated:

"The Court instructs you that the question of insanity should be carefully considered by the jury because a due regard for the ends of justice and the welfare of society demand that a party guilty of a crime be convicted."

An instruction to this effect is not reversible under the case of *Dipert* v. *State*, (1972) 259 Ind. 260, 286 N.E.2d 405, and there is no error here. However, although we have not previously reversed for such reason, we do not believe that this instruction should have been tendered or given. Although the instruction and very similar ones were generally approved in ancient cases, it has been more recently severely criticized. *See Bobbitt* v. *State*, (1977) 266 Ind. 164, 361 N.E.2d 1193; *Walker* v. *State*, (1976) 265 Ind. 8, 349 N.E.2d 161. We reversed in *Dipert* v. *State, supra,* and

again in *Huddleston* v. *State,* (1973) 260 Ind. 398, 295 N.E.2d 812, because of instructions only slightly more noxious. In fact, the instruction in the case before us, in *Walker,* and in *Bobbitt* are but modifications of the *Dipert* instruction and taken verbatim from some dicta from that case. It should not be necessary for this Court to reverse criminal cases in order to eradicate a practice that we have so clearly disapproved.

## VI.

The last contention raised by appellant concerns the trial court's overruling of his motion for a suspended sentence. Appellant argues that the provisions of Ind. Code § 35-7-1-1 (Burns 1975), under which his motion was denied, arbitrarily and capriciously excludes persons convicted of murder, arson, first-degree burglary, rape, treason, kidnapping, and robbery for the second time, from the benefits of suspended sentences. By "purporting to deal with classes of offenses" and "overlooking the individual," the argument goes, the statute is in contravention of the equal protection and due process provisions of the Fourteenth Amendment of the Constitution of the United States.

The arguments that the nature of the crime should only be one factor to be considered in suspending or not suspending a sentence, and that the individual need for rehabilitation should be considered, are challenges to the wisdom of the statute, not its validity. The wisdom of the statute is exclusively within the province of the legislature and not subject to consideration by the courts. As stated by the court in *State* v. *Gerhardt,* (1896) 145 Ind. 439, 450-51, 44 N.E. 269, 273:

> "As to the expediency or wisdom of a statute, we have no concern, that is a question lodged wholly within the discretion of the legislature. A court cannot declare a statute unconstitutional and void solely on the ground of unjust and oppressive provisions, or because it is supposed to violate the natural, social, or political rights of the citizen, unless it can be shown that such injustice is prohibited, or such rights guaranteed or protected by the constitution."

Appellant has cited no constitutional provision, principle, or authority requiring that statutes such as the one in question be based upon the individual rather than the crime. There is no constitutional right to probation or suspended sentences for convicted criminals, and there is no absolute right to these benefits for anyone under our statute, since their granting or denial rests in the judge's discretion. We also believe that the legislature may have reasonably considered the classes of crimes excluded from the possibility of suspended sentences to deserve this treatment because of their seriousness, and because of the danger which their perpetrators present to society as distinguished from the perpetrators of other crimes. We thus find no merit in appellant's argument against the constitutionality of this provision.

The judgment of the trial court is affirmed.

All Justices concur.

NOTE.—Reported at 369 N.E.2d 1079.