**Leonard LONSON, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 1079S268.**

Supreme Court of Indiana.

July 3, 1980.

Rehearing Denied Sept. 3, 1980.

David Capp, Cohen & Thiros, Merrillville, for appellant.

Theo. L. Sendak, Atty. Gen., Carmen L. Quintana, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

Defendant-appellant Leonard Lonson was charged in Lake Superior Court, Criminal Division, with two counts of first degree murder for the fatal shooting of his parents, Chester and Florence Jablonski. He was found guilty by a jury and sentenced to a term of life for each count. Two issues are raised for our consideration on this appeal, concerning: (1) whether the trial court erred in denying appellant's motion to suppress an out-of-court statement made by him; and (2) whether the trial court erred in denying appellant's motion for a directed verdict at the conclusion of the State's case-in-chief.

On October 19, 1974, at approximately 3:30 a. m., appellant telephoned the police to report what he characterized as two "mercy killings." He identified himself to the dispatcher, Officer Woodke, and stated that he had shot and killed his parents. In what Woodke described as a calm and clearly understandable voice, Lonson gave specific directions to his parents' home. Officers Sebban and Kurth were dispatched to the scene, and, upon arrival, were invited into the house by appellant. They found Lonson's father dead in the bathroom, and appellant freely acknowledged that he had shot him. Lonson then took the officers into the bedroom, where his mother's body

was found, and told them that he had also killed his mother. When the officers asked the whereabouts of the weapon, appellant led them to the kitchen, where a revolver was found. At that time, he was placed under arrest and advised of his rights.

Officer Kurth testified that appellant's tone of voice was normal and his comments and answers were coherent, understandable and responsive. While en route to the police station, appellant stated to Sebban and Kurth, "I guess I'm going back where I came from." This apparently was a reference to the Veterans Administration Hospital in Indianapolis, from which Lonson had been discharged some ten months before. The staff of the VA Hospital had determined, at the time of his release, that appellant was capable of resuming full-time employment.

At the police station, appellant was again advised of his rights. He stated that he understood his rights and was willing to discuss the incident. He first related orally the facts surrounding the shootings. After hearing the oral recitation of what had occurred, the officers informed appellant Lonson that they wanted to take a written statement. Lonson questioned the need for a written statement and appeared to be somewhat scared and nervous at that point. He did, however, grant their request and repeated the statement, which was typed verbatim. Appellant examined the statement as typed, made a deletion on the third page, and signed the statement.

On December 2, 1974, the court held a hearing to determine appellant's competency to stand trial. Dr. Frank Hogle, a psychiatrist, reported to the court that, in his opinion, appellant was legally insane, but was, nevertheless, competent to stand trial. Dr. Batacan testified that, in his opinion, Lonson was presently insane, but that he disagreed with Dr. Hogle on the question of appellant's competence to stand trial. The court found that appellant did not have sufficient comprehension to understand the nature of the offense with which he was charged or to aid in the preparation of his defense, and accordingly ordered him com-

mitted to the custody of the Indiana Department of Mental Health. On January 3, 1975, appellant was confined in Beatty Memorial Hospital in Westfille. On October 13, 1978, officials at the hospital reported to the trial court that appellant Lonson had regained competency, and the cause proceeded to trial.

I.

On April 17, 1979, appellant Lonson filed his special plea of insanity and the trial court appointed Doctors Hogle and Batacan to examine the defendant. Appellant filed a motion to suppress his confession, claiming it was not given voluntarily, in that he was insane at the time the confession was obtained. At the suppression hearing, the prosecution and defense stipulated that if Doctors Hogle and Batacan were called as witnesses, they would testify that the defendant could not have understood what was being said to him when he was advised of his rights, nor could he have appreciated the fact that he was giving up certain constitutional rights by making the statement. Appellant Lonson testified that when he signed the written statement, he was not aware the statement could be used against him in a murder prosecution. Other evidence at the suppression hearing showed that during the booking procedure appellant was described as neat and clean-shaven. The tone of his voice was normal and his answers to questions regarding personal information were responsive. The evidence further showed that appellant had been adopted by Chester and Florence Jablonski in 1936. He attended parochial schools and later received a Bachelor of Arts degree from Indiana University and a Master's Degree in sociology from Roosevelt University in Chicago. He was above average in intelligence, he never held a full-time, steady job, and was not employed at the time of this incident. Lonson also served in the armed forces. In 1958, he legally changed his name to Lonson.

Concerning the statement itself, appellant made a deletion on the third page and initialed this change. Appellant testified that the police advised him of his rights

before he gave the statement, and that he understood those rights at the time he gave the confession and presently, as he was testifying. Appellant also testified that at the time he signed the statement, nothing had been said about being prosecuted for murder and he did not believe the statement could subject him to being charged with murder. The trial court found beyond a reasonable doubt that the defendant was advised of his rights and made the statement knowingly, voluntarily and intelligently. The court, therefore, denied the motion to suppress.

The admissibility of a confession is to be determined from the totality of the circumstances. On appeal, we review the question of such admissibility as we do other sufficiency matters. That is, we determine only whether there was substantial probative evidence to support the trial court's findings. In making this determination, we do not reweigh the evidence nor judge the credibility of witnesses. *Ray v. State*, (1979) Ind., 396 N.E.2d 373, 375; *Porter v. State*, (1979) Ind., 391 N.E.2d 801, 806; *Murphy v. State*, (1977) 267 Ind. 184, 191, 369 N.E.2d 411, 414. A similar question was presented in *Washington v. State*, (1979) Ind., 390 N.E.2d 983, wherein the defendant contended that his statement was not voluntary because his mental condition was such that he did not know what he was doing. After noting the standard of review, we said in *Washington*:

> We have been presented with no circumstances indicating unusual or coercive action by the police which logically would have misled the defendant or overborne his will at the time the statement was made. While the defendant claimed he was insane at the time of the incident, there was testimony from other witnesses that he was acting in a rational manner and was aware of what was going on. Thus, there was no error in admitting defendant's statement."

390 N.E.2d at 988.

■ We find the same facts and circumstances persuasive here that were present in *Washington v. State*. Although the evidence as to the sanity of the defendant at the time of giving his statement was in conflict, we think there was ample evidence from which the court could reasonably find beyond a reasonable doubt that the defendant was advised of his rights and that he understood those rights and made the statement knowingly, voluntarily and intelligently. We, therefore, find no error in the court's denial of the motion to suppress.

## II.

■ At the close of the State's case-in-chief, appellant moved for a directed verdict, contending that the verdict was not supported by sufficient evidence on the question of his sanity at the time of the incident. A motion for directed verdict can be granted only when there is a total absence of evidence on some essential issue required to convict, or where the evidence is without conflict and susceptible of but one inference, that being in favor of the accused. *Lyda v. State*, (1979) Ind., 395 N.E.2d 776, 778. Moreover, a claim of insufficient evidence on the question of sanity is treated on appeal as any other insufficiency claim. We will not weigh the evidence nor resolve questions of the credibility of witnesses, but will look to that evidence and reasonable inferences to be drawn therefrom which support the jury's verdict. If, from that viewpoint, there is evidence of probative value from which the trier of fact could reasonably infer appellant's sanity beyond a reasonable doubt, the verdict will not be disturbed. *Jacks v. State*, (1979) Ind., 394 N.E.2d 166, 172; *Sceifers v. State*, (1978) 267 Ind. 687, 696–97, 373 N.E.2d 131, 136; *Downs v. State*, (1977) 267 Ind. 342, 347, 369 N.E.2d 1079, 1081. In *Atkinson v. State*, (1979) Ind.App., 391 N.E.2d 1170, 1178, the Court of Appeals properly noted:

> The question of sanity is a question of fact which is to be determined by the jury as the trier of fact. The weight to be accorded expert testimony, as well as lay testimony, is the exclusive province of the trier of fact which is at liberty to discount it or to reject it in the face of lay testimony which it finds more persuasive. *Murphy v. State*, (1976) 265 Ind. 116, 352 N.E.2d 479.

In addition to the facts we have already related in this opinion, the following evidence was adduced at trial. On October 11,

1974, appellant went to the Blythe Sporting Goods Shop for the purpose of purchasing a hand gun. Appellant bought a revolver from Richard Blythe, the owner of the shop, and filled out the required federal and state forms, including a certification that he had never been committed to a mental institution. Under the law, a seven-day waiting period was required before appellant could take possession of the gun. He made a down payment of twenty dollars, the balance payable at the time of delivery, and then left the store. This transaction took fifteen to twenty minutes. Blythe testified that he noticed nothing unusual with respect to Lonson's appearance or demeanor, and that Lonson acted quite normally. He said Lonson's speech was understandable and coherent, and his answers were responsive to questions asked regarding personal information needed in filling out the forms.

One week later, appellant returned to the store to pick up the revolver. Another employee, Dale Clark, assisted appellant on this occasion. Appellant paid the balance due on the revolver and also purchased a box of cartridges. Clark stated that there was nothing odd or unusual about Lonson's appearance or demeanor. Again, Lonson's speech was understandable, and he was responsive to comments and questions. Clark testified that his normal practice was to inform the police if a buyer of a firearm acted erratically or if he believed the buyer should not have the firearm. He said he had no reason to feel that such action was necessary in this instance. In addition, when appellant was asked when he had first considered killing his parents, he responded: "Years ago, but I had no job and no money." The expert witnesses, Doctors Hogle and Batacan, testified that it would be consistent with appellant's mental disease that he would act quite normally, in the manner in which he was observed to do here, and that these facts would not indicate that appellant was sane at the time he committed these murders.

■ These, of course, were all facts and circumstances presented to the triers of fact for their determination. We think there was substantial evidence from which the jury could find that appellant committed these murders and that he was sane when he did so. There was sufficient evidence from which the jury could find that, if the defendant was suffering from a mental disease or defect at the time of the incident, he retained a substantial capacity during the criminal acts to appreciate the wrongfulness of his conduct and to conform his conduct to the requirements of law. *Lynn v. State*, (1979) Ind., 392 N.E.2d 449; *McCoy v. State*, (1979) Ind., 393 N.E.2d 160. The trial court, therefore, correctly denied the defendant's motion for directed verdict, and the jury's verdict was sustained by sufficient evidence.

The judgment of the trial court is affirmed.

GIVAN, C. J., and DeBRULER and HUNTER, JJ., concur.

PRENTICE, J., dissents with separate statement.

PRENTICE, Justice, dissenting.

I dissent and would remand the case with instructions to enter a verdict of not guilty by reason of insanity for the reasons stated in my dissenting opinion in *Lynn v. State*, (1979) Ind., 392 N.E.2d 449, 453.