**David J. ISOM, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

**No. 4–884A236.**

Court of Appeals of Indiana, Fourth District.

June 11, 1985.

62

Mark S. Fraundorfer, Public Defender, Anderson, for appellant.

Linley E. Pearson, Atty. Gen., Lisa M. Paunicka, Deputy Atty. Gen., Indianapolis, for appellee.

MILLER, Presiding Judge.

After failing a breathalyzer test administered at the Chesterfield, Indiana, police station, David Isom, defendant-appellant, was arrested for drunk driving and placed into a police car for transport to the Madison County Jail, accompanied by two officers of the Chesterfield Police Department. While the police vehicle was stopped at a traffic signal near the jailhouse, Isom opened the car door and fled from the officers. One of the officers caught up with Isom but was overpowered and injured by him, allowing Isom to escape. Isom was discovered four days later at Fort Sill, Oklahoma, and he eventually was returned to Madison County for trial on charges of escape resulting in bodily injury, a Class C felony, IND.CODE § 35–44–3–5 (1982), and battery of a law enforcement officer, a Class A misdemeanor, *id.* § 35–42–2–1(1). Following his conviction by jury on both charges, Isom was given concurrent sentences of five years on the Class C felony and one year on the Class A misdemeanor. He now brings this appeal, raising the following issues:

I. Whether the trial court erred in denying Isom's motion for a directed verdict on the Class C felony escape charge?

II. Whether the trial court erred in denying Isom's motion for a mistrial based on the alleged introduction of evidence of other criminal activity?

III. Whether Isom was denied a fair trial because of allegedly improper comments made by the prosecutor during final argument?

IV. Whether the trial court erred by imposing an excessive executed sentence of five years for Class C felony escape?

V. Whether the trial court erred in entering sentence based on a presentence investigation report that failed to include statutorily required information?

Inasmuch as the state admits error with respect to Issue V, requiring that this case be remanded for further sentencing proceedings, we shall not address Issue IV. In all other respects, the trial court is affirmed. The facts relevant to each issue will be related where appropriate.

I.

At about 1:30 on the morning of January 6, 1983, Chesterfield Police Department Officer Robert Bennett and Reserve Officer Dennis O'Dell were patrolling Old State Road 67 in Madison County, Indiana, near the town of Chesterfield. They observed an automobile driven by David Isom cross the center line of the highway at least three times and pulled the vehicle to the side of the road on suspicion that the driver was operating a motor vehicle while intoxicated. Officer Bennett asked Isom for his

driver's license, but Isom was able to produce only a paper indicating his license was suspended. Isom also produced a military identification and a document showing he was on authorized leave from the army base at Fort Sill, Oklahoma. Officer Bennett detected the odor of alcohol and Isom's bloodshot eyes and asked Isom to step from his vehicle to perform two field sobriety tests, which he failed. Isom consented to take a breathalyzer test and was taken in the patrol car to the Chesterfield police station where Officer Bennett administered the test. The results showed that Isom's blood-alcohol content was over .10%, and he was arrested for driving while intoxicated.

Isom became angry and abusive upon his arrest but agreed not to cause any trouble if the officers would not handcuff him. Officer Bennett agreed, and Isom was placed in the front passenger seat of the patrol car for transport to the Madison County Jail in Anderson, Indiana. Officer Bennett drove the vehicle and Officer O'Dell rode in the back seat behind Isom.

As the police vehicle approached the front entrance of the jail, which is not where prisoners are taken for processing and lockup, Isom opened the car door and began to step out. Officer Bennett ordered him back into the car, and Officer O'Dell got out of the back seat to push Isom back into the vehicle while Officer Bennett pulled him back in from the inside. Officer Bennett proceeded to drive around the block toward the lock-up entrance to the jail, but when he stopped at a red light, Isom opened the door and fled down the street.

Officer O'Dell jumped out of the back seat and pursued Isom on foot while Officer Bennett drove his patrol car in the direction Isom was running. When Isom ran across the street and tripped and fell on the curb on the other side, Officer Bennett was able to stop the car, get out, and catch up to him where he lay. Officer Bennett got on top of Isom, but Isom threw him off, got on top of Bennett and twice banged the officer's head on the sidewalk, breaking Bennett's glasses. The scuffle continued until Isom got up off of Officer Bennett and ran back across the street toward the patrol car and Officer O'Dell. Officer Bennett caught up with Isom again, grabbed him by the arm, and yelled to Officer O'Dell for assistance. Bennett was "in a groggy state" (R. 286), and Isom was able to pull free from his grasp, shove him down on one knee and again flee the two officers. They got back into the patrol car and summoned assistance from the Anderson Police Department in their search for Isom, which proved fruitless.

Officer Bennett later went to a hospital emergency room where he was treated for contusions and abrasions on his face and lacerations of the knuckles of his hand. Isom was discovered on January 10, 1983, back at Fort Sill, Oklahoma, to which he had returned from leave. Isom was later extradicted for trial on charges of Class C felony escape and Class A misdemeanor battery.[1]

The above statement of facts summarizes the relevant evidence presented in the state's case-in-chief, at the conclusion of which Isom moved for a directed verdict,[2] *see* Ind.Rules of Procedure, Trial Rule 50(A)(1), on the ground that the evidence showed the bodily injury was inflicted on Officer Bennett only after Isom's escape was completed and that the intent of the escape statute, IC 35–44–3–5, is to make escape a Class C felony only when bodily injury is inflicted during the actual

---

1. Captain Gary Rudig of the Chesterfield Police Department stated at trial that the drunk driving charge against Isom was dismissed from the Anderson City Court at the request of a Madison County Deputy Prosecutor, who planned, but neglected, to refile the charge in the Madison County Superior Court as part of the present proceedings. Captain Rudig planned to refile the drunk driving charge against Isom in the Anderson City Court following the trial in this case. (R. 230–31.)

2. Isom presented no evidence in his own defense, and thus, has preserved this issue for review. *See Prine v. State* (1983), Ind., 457 N.E.2d 217.

escape or the events leading up to the escape. Because he had momentarily gained his freedom at the time of the injury to Officer Bennett, Isom argued, the escape was complete at that time, and the bodily injury was not inflicted while committing it, as required by the escape statute, which states:

"A person who intentionally flees from lawful detention or intentionally fails to return to lawful detention following temporary leave granted for a specified purpose or limited period commits escape, a Class D felony. However, the offense is a Class C felony if, while committing it, the person draws or uses a deadly weapon or inflicts bodily injury on another person."

IC 35–44–3–5.

As our supreme court has stated, in reviewing the denial of a criminal defendant's motion under Trial Rule 50, we will reverse only where "there is a total absence of evidence on some essential issue required to convict, or where the evidence is without conflict and susceptible of but one inference, that being in favor of the accused." *Lonson v. State* (1980), 273 Ind. 581, 406 N.E.2d 256, 259.

 We disagree with Isom's position that one of the essential elements required to convict a defendant of Class C felony escape is a showing that the bodily injury was inflicted at the time the defendant gains his momentary freedom or during the events leading up to that point, *i.e.*, while he remains under lawful detention.[3] The crime of escape is committed when a person "intentionally flees from lawful detention," IC 35–44–3–5. For purposes of this case, the crime is elevated from a Class D to a Class C felony "if, while committing it, the person ... inflicts bodily injury on an-

---

3. Isom's position on this issue is illustrated by the following statement in his appellate brief:

"The bodily injury, if any, inflicted by Appellant upon Officer Bennett occurred after the commission of the escape while the officer was attempting to rearrest Appellant....

The state may argue that the arrest or custody incident thereto was continuing or that Appellant was under constructive arrest after he fled, however, this reasoning has been rejected. *See, e.g., Utley v. State,* (1972) 258 Ind. 443, 281 N.E.2d 888. Arrest and thus lawful detention requires actual restraint."

Appellant's Brief at 7. Thus does Isom reach the erroneous conclusion that escape is a Class C felony only if the bodily injury is inflicted while the defendant remains under lawful detention.

*Utley v. State, supra,* fails to support Isom's position. There, the defendant was convicted of jailbreaking when he failed to return to the county jail at the appointed time after being released temporarily to look for a job under the prison's work release program. The statute under which the defendant was convicted stated:

"Any person being lawfully confined in any county jail or any prison of this state who while under lawful detention shall escape therefrom, or from the custody of the officer lawfully in charge of such person, shall be deemed guilty of jail breaking...."

I.C. 35–21–8–1 (1971) (repealed 1977), *quoted in Utley,* 258 Ind. at 444, 281 N.E.2d at 889. The charging affidavit alleged the defendant escaped from the *constructive* custody of the county sheriff by failing to return to the county jail at the required time. Our supreme court distinguished actual custody—"where the person is under actual, immediate and physical restraint such as when a person is arrested, confined in a prison, on a work gang supervised by a guard in the immediate vicinity, being taken by a guard to the hospital, etc."—from constructive custody—"where the person has *legal* restraints upon his freedom but is not subject to actual supervision by a guard in the immediate vicinity, *e.g.* being on parole, working under a work release program, etc." 258 Ind. at 445–46, 281 N.E.2d at 890. The court construed the word "custody" in the jailbreaking statute to mean actual custody and held the defendant's motion to quash the affidavit should have been granted because it impermissibly broadened the statute by alleging an escape from constructive custody. 258 Ind. at 446–47, 281 N.E.2d at 890.

*Utley* is inapposite to the present case because it involved an escape from constructive custody, an act not covered by the court's narrow interpretation of the jailbreak statute, while Isom clearly fled from actual custody as defined in *Utley, supra.* The present escape statute, IC 35–44–3–5, plainly elevates the crime to a Class C felony when bodily injury is inflicted while the defendant is *in the process of fleeing* such actual custody, which is punishable because it "poses the threat of violence and injury due to the fact that the one supervising the prisoner will attempt to resist the prisoner's doing anything other than what the prisoner was ordered to do." *Utley,* 258 Ind. at 446, 281 N.E.2d at 890. In the present case, of course, the threat of violence and injury became a reality for Officer Bennett.

other person." *Id.* The phrase "while committing it" obviously refers to the basic Class D felony escape, i.e., "while intentionally fleeing from lawful detention." Thus, in order to overcome a defendant's motion for directed verdict in a prosecution for Class C felony escape involving bodily injury, the state must present some evidence that the defendant: (1) intentionally fled; (2) from lawful detention; (3) and while fleeing from such detention, inflicted bodily injury on another person.

Indiana Code section 35–41–1–2 (1982)[4] defines "lawful detention" as "arrest ... or custody for purposes incident to [arrest] including transportation ... or any other detention for law enforcement purposes...." Thus, the evidence that showed that Isom was in the police vehicle with Officers Bennett and O'Dell for the purpose of being transported from the Chesterfield police station to the Madison County Jail following his arrest for drunk driving showed that Isom was under lawful detention when he opened the car door and ran down the street. Obviously, at that point, Isom was "fleeing" from such lawful detention, with Officers Bennett and O'Dell in hot pursuit. Isom was still in the process of fleeing when Officer Bennett caught up to him and was pummelled by Isom, sustaining lacerations to his face and hand constituting "bodily injury."[5] In short, the state presented some evidence that Isom was under lawful detention, that he fled from it, and that, while fleeing, he inflicted bodily injury on Officer Bennett. Thus, there was evidence on every essential issue required to convict Isom of Class C felony escape, and the trial court did not err in overruling Isom's motion for directed verdict. *See Lonson v. State, supra.*

## II.

Isom next alleges the trial court erred in overruling his motion for a mistrial based on the alleged introduction of evidence of other criminal activity on Isom's part. The record shows that Isom made a pre-trial motion for an order in limine prohibiting reference to any prior incidents of battery, particularly two in Muncie (Delaware County), Indiana. It is not clear that the trial court granted the motion, although we will presume the court did so, based on the following colloquy at trial:

"Q. [by the prosecuting attorney] Did you do anything else in reference to this investigation?

A. [by Sgt. Thomas Watson, Chesterfield Police Department] On February the 2nd, myself and Captain Rudig made a record check in Muncie, with the Delaware County Sheriff's Department.

Q. Okay, which ... I believed the Judge has at this time ruled we can't get into that so, I ... In reference to anything other than your contact with Muncie, what did you do? Did that end your investigation?

A. The only other investigation was through the Muncie Police Department, that I was in on.

JOHN WALSH [DEFENSE COUNSEL]: Your Honor, he was asked not to comment about his contacts with the Muncie Police Department and then he comes right back and does the very same thing. I'm going to ask he be adminoshed [sic], that his response be stricken from the record and the jury instructed they are totally to disregard those answers and comments concerning Muncie Police Department."

(R. 236–37.) The trial court granted the defense counsel's motion to strike and admonished the jury to disregard the witness's final answer. (R. 238.)

At the conclusion of the state's case-in-chief, the prosecutor, in order to make an offer to prove one incident in which Isom

---

**4.** Repealed by Act of April 22, 1983, P.L. No. 311–1983, § 49, 1983 Ind.Acts 1861, 1922; presently encoded at IC 35–41–1–18 (Supp.1983).

**5.** "'Bodily injury' means any impairment of physical condition, including physical pain." IC 35–41–1–2 (1982) (repealed by Act of April 22, 1983, P.L. No. 311–1983, § 49, 1983 Ind.Acts 1861, 1922; presently encoded at IC 35–41–1–4 (Supp.1983)).

allegedly committed a battery on a Muncie police officer, made the following statement: "Your Honor, at this time, I don't mean to prejudice the jury, therefore, I believe my next witness from the Muncie Police Department should be heard outside the hearing of the jury." (R. 303.) After the jury was excused, defense counsel moved for a mistrial on the ground that the prosecutor's reference to a witness from the Muncie Police Department left the jury to speculate on the existence of other criminal activity on Isom's part. The trial court denied the motion for mistrial.

In a similar situation in *Bradford v. State* (1983), Ind., 453 N.E.2d 250, the trial court overruled the defendant's motion for mistrial based on an alleged violation of an order in limine regarding the defendant's prior criminal activity. Upholding the trial court, our supreme court stated:

"The denial of a motion for mistrial will be reversed only upon a showing of an abuse of discretion by the trial court. The case must be reversed only if the statement was so prejudicial as to have placed the defendant in 'a position of grave peril to which he should not have been subjected.' *Morgan v. State*, (1981) [275] Ind. [666], 419 N.E.2d 964, 967. The declaration of a mistrial is an extreme action which is warranted only 'when no other action can be expected to remedy the situation.' *Gambill v. State*, (1982) Ind., 436 N.E.2d 301, 304; *Hicks v. State*, (1979) [272] Ind. [350], 397 N.E.2d 973, 975. The burden is on the defendant to show that he was harmed and placed in grave peril by the denial of the mistrial motion. *White v. State*, (1971) 257 Ind. 64, 77–78, 272 N.E.2d 312, 319–20."

453 N.E.2d at 252.

We do not believe the prosecutor's statement on which Isom's motion for mistrial was based was so prejudicial as to place Isom in a position of grave peril to which he should not have been subjected. Earlier in the state's case-in-chief, Captain Gary Rudig of the Chesterfield Police Department testified regarding the search for Isom following his escape. Isom's military leave papers indicated his leave address and phone number were in Muncie, and the Chesterfield police contacted his wife there. She told the police she had not seen Isom but had reported to the Muncie police that the car Isom had been driving, which was impounded at the time of his arrest for drunk driving, had been stolen. A "Muncie Police Department Vehicle Stolen/Tow-In Report," with certain excisions made at defense counsel's request, was admitted into evidence as State's Exhibit 5 in connection with Captain Rudig's testimony. Defense counsel made no objection to this testimony or to State's Exhibit 5 on the basis of the presumed order in limine.

■ Under these circumstances, we believe the prosecutor's reference to a witness from the Muncie Police Department, on which Isom's motion for mistrial was based, was at most harmless error. The jury was at least as likely to have connected the reference with the search for Isom after his escape or with State's Exhibit 5 as with any other criminal activity on Isom's part, no evidence of which was ever put before the jury. *Cf. Morris v. State* (1982), Ind.App., 433 N.E.2d 74 (erroneous admission of evidence not prejudicial when same or similar evidence has been admitted without objection); *Simmons v. State* (1983), Ind.App., 455 N.E.2d 1143 (in armed robbery prosecution, any error in admitting a knife found in defendant's car was at most harmless in that a picture of the knife had previously been admitted without objection). Therefore, the prosecutor's reference to a witness from the Muncie Police Department could not have placed Isom in a position of grave peril justifying the extreme remedy of a mistrial. The trial court did not abuse its discretion in denying Isom's motion therefor. *Bradford v. State, supra.*

### III.

■ Isom next argues he was denied a fair trial because of allegedly improper comments made by the prosecutor in his final argument to the jury. Isom directs

our attention to several places in the transcript of the prosecutor's argument where allegedly improper comments were made, but the transcript also shows that defense counsel interposed an objection to only two of the comments. It is well settled that the failure to raise a specific objection at the time when improper comments are made results in waiver of the issue for review. *Pavone v. State* (1980), 273 Ind. 162, 402 N.E.2d 976; *Womack v. State* (1978), 270 Ind. 8, 382 N.E.2d 939; *Maldonado v. State* (1976), 265 Ind. 492, 355 N.E.2d 843. Therefore, we will consider only those prosecutorial comments to which defense counsel raised a timely objection. The following colloquy includes both of the allegedly improper comments and the objections thereto during the prosecutor's final argument:

"[By Ronald McNabney, prosecuting attorney]: Ladies and gentlemen of the jury, in conclusion, again, the State considers this a very, very important case, not only because of the underlying fact was a D.U.I., Driving While Intoxicated, that makes it very serious; but in addition, there was a battery on an Officer. The State is asking you to stand behind those Officers, to patrol those highways, to protect you, and I and our families.

JOHN WALSH [Defense Counsel]: Your Honor, I object. He's appealing to this jury's emotions and I've sat here patiently hoping that he would not get back to it and I apologize to the jury and to Mr. McNabney for this interruption, but I cannot let this go by one (1) more time. He's appealing to their emotions and I believe that is not proper, your Honor.

RONALD McNABNEY: May I respond, Judge? That is proper. My, my final argument does not have to only be based on facts. I can tell the jury the emotion that I feel as the State, for the State. It is entirely proper, just as he can state the same for the defense.

JUDGE: Let's continue. You have only a couple more minutes left of your final argument.

RONALD McNABNEY: I'm asking you to stand behind those Officer to patrol those highways to protect your family and my families from drunk drivers.

JOHN WALSH: I object, your Honor, that cannot go unnoticed. This man is not on trial for drunk driving and to ask them to protect him and his family and his children from drunk driving is highly unproper and I must respectfully ask for a mistrial at this point in time, your Honor and I'm sorry that I have to do that.

RONALD McNABNEY: May I continue, Judge.

JUDGE: The Motion for a mistrial denied. Continue Mr. McNabney."

(R. 411–13.)

■ On appeal, Isom argues the prosecutor's comments were an improper attempt to prejudice him and to arouse the passions of the jury, denying him a fair trial and requiring the grant of his motion for a mistrial. To reverse the denial of Isom's motion, this court must determine first, that the prosecutor's statements did indeed constitute misconduct, and second, that the misconduct, if any, placed Isom in a position of grave peril. *Johnson v. State* (1983), Ind.App., 453 N.E.2d 365 (*citing Maldonado v. State, supra* ). Whether the defendant was placed in a position of grave peril "is determined by the probable persuasive effect of the misconduct on the jury's decision." *Maldonado v. State*, 265 Ind. at 499, 355 N.E.2d at 848.

■ It is true that the prosecutor engages in misconduct by stating his final argument in terms calculated to inflame the passions or prejudices of the jury, *Limp v. State* (1982), Ind., 431 N.E.2d 784, or by asking the jury to convict the defendant for any reason other than his guilt, *Maldonado v. State, supra* (citing ABA Standards for Criminal Justice, The Prosecution Function § 5.8(d) at 40 (approved Draft 1971)). For the sake of argument, we will assume the prosecutor's comments constituted misconduct; it does not follow, however, that Isom was therefore placed in a position of grave peril warranting reversal of his conviction.

In a similar case, *Dresser v. State* (1983), Ind., 454 N.E.2d 406, the prosecutor suggested in his final argument to the jury that their failure to convict the defendant might subject the jury, their children or their loved ones to danger, and that an acquittal would expose society to a great risk. Our supreme court refused to reverse the defendant's conviction, stating: "In context, we are of the opinion that these [comments] did not subject Defendant to 'grave peril' as that term was used in *White v. State*, (1971) 257 Ind. 64, 78, 272 N.E.2d 312, 320; *Maldonado v. State*, (1976) 265 Ind. 492, 355 N.E.2d 843, and other cases cited by him." 454 N.E.2d at 407. We find the prosecutor's comments in the present case closely analogous to those in *Dresser*, and we likewise believe the comments did not place Isom in a position of grave peril as determined by the probable persuasive effect of the presumed prosecutorial misconduct on the jury's decision. *See Maldonado v. State, supra.*

In demonstrating the probable effect of the prosecutor's misconduct on a jury's decision, it is not necessary that a convicted defendant prove conclusively that, but for the misconduct, he would have been acquitted. *Johnson v. State, supra.* "Rather, we must reverse where the evidence is close and the court does not counter the persuasive effect of the prosecutor's prejudicial remarks by admonishing the jury to disregard them." *Id.*, 453 N.E.2d at 369. In the case before us, although the trial court did not admonish the jury,[6] we do not believe the evidence was so close that we may conclude that the prosecutor's comments had such a persuasive effect as to alter the jury's decision. Isom's defense did not rely on the contention that he did not commit the acts with which he was charged, but on the legal argument, rejected in Part I of this opinion, that his conduct was not within the escape statute's definition of a Class C felony because the escape was complete at the time bodily injury was inflicted on Officer Bennett. Indeed, in his final argument, defense counsel stated to the jury: "Even though you may believe in your hearts and mind that he [Isom] did do something, that he is not innocent in a moral sense, he remains 'not guilty' of the crime with which he is charged. I would ask you to return verdicts of 'guilty' of Escape, a Class D Felony and Battery, a Class A Misdemeanor." (R. 398.) We do not believe the prosecutor's presumably improper comments were the difference between the jury finding Isom guilty of Class D felony escape, as requested by defense counsel, and finding him guilty of Class C felony escape. Thus, the probable persuasive effect of the comments on the jury's decision was not such as to place Isom in a position of grave peril to which he should not have been subjected. Therefore, we conclude the prosecutor's comments do not require reversal of Isom's conviction. *See Maldonado v. State, supra.*

### IV and V

Isom also alleges the trial court erred by imposing an excessive executed sentence of five years for Class C felony escape (Issue IV) and by entering sentence based on a pre-sentence investigation report that failed to include statutorily required information (Issue V). The state admits the probation officer who prepared

---

6. The record shows that defense counsel, in response to the prosecutor's allegedly improper comments, never requested the jury be admonished but merely objected to the prosecutor's first comment and objected to his second comment and moved for a mistrial. As our supreme court has instructed:

"The correct procedure to employ against improper argument is to request an admonishment. *Dean v. State*, (1982) Ind., 433 N.E.2d 1172, 1178. Following the giving of the admonishment, if it is believed that the damage has not been, thereby, repaired, a motion for mistrial should be made. Where it is obvious, from the nature and degree of misconduct, that no admonishment could suffice, the motion for one may be dispensed with. But, admonishments are presumed to cure error which may have occurred, *Ballard v. State*, (1974) 262 Ind. 482, 318 N.E.2d 798, and such errors are presumed to be curable in that manner."
*Dresser v. State* (1983), Ind., 454 N.E.2d 406, 407–08.

the pre-sentence investigation report failed to include a written statement submitted by Isom's victim or, absent such statement, certification that the probation officer attempted to contact the victim to obtain a written statement, in violation of Indiana Code section 35–38–1–9(c) and (d) (Supp. 1983).[7] In *Busam v. State* (1983), Ind. App., 445 N.E.2d 118, this court held that a probation officer's failure to include such information under the predecessor to the present statute[8] required the case to be remanded for further sentencing proceedings. The present statute, like its predecessor, uses the mandatory terms "must" and "shall" in requiring the pre-sentence investigation report to include a written statement from the victim or the probation officer's certification that he attempted to contact the victim to obtain a written statement. *See* IC 35–38–1–9(c), (d) (Supp.1983); *Busam v. State, supra.* Therefore, we must also remand the present case for further sentencing proceedings. Because the executed sentence imposed on Isom is subject to revision on remand, we do not address the allegation that the sentence imposed was excessive.

Isom's convictions are affirmed. Cause remanded for further sentencing proceedings consistent with this opinion.

CONOVER and YOUNG, JJ., concur.

**7.** As added by Act of April 22, 1983, P.L. No. 311–1983, § 3, 1983 Ind.Acts, 1861, 1871, the statute states:

"Sec. 9. (a) As used in this section, 'recommendation' and 'victim' have the meanings set out in IC 35–35–3–1.

(b) The presentence investigation consists of the gathering of information with respect to:

(1) the circumstances attending the commission of the offense; and

(2) the convicted person's history of delinquency or criminality, social history, employment history, family situation, economic status, education, and personal habits.

(c) The presentence investigation may include any matter that the probation officer conducting the investigation believes is relevant to the question of sentence, and must include:

(1) any matters the court directs to be included;

(2) any written statements submitted to the prosecuting attorney by a victim under IC 35–35–3; and

(3) any written statements submitted to the probation officer by a victim.

(d) If there are no written statements submitted to the probation officer, he shall certify to the court:

(1) that he has attempted to contact the victim; and

(2) that, if he has contacted the victim, he has offered to accept the written statements of the victim, or to reduce his oral statements to writing, concerning the sentence, including the acceptance of any recommendation."

IC 35–38–1–9 (Supp.1983).

**8.** *See* IC 35–4.1–4–10 (1982) (repealed by Act of April 22, 1983, P.L. No. 311–1983, § 49, 1983 Ind.Acts 1861, 1922).