Tyrone Douglas LYDA, Appellant,

v.

STATE of Indiana, Appellee.

No. 479S90.

Supreme Court of Indiana.

Oct. 23, 1979.

Peter J. Caras, Jr., Gary, for appellant.

Theodore L. Sendak, Atty. Gen., Michael Gene Worden, Deputy Atty. Gen., Indianapolis, for appellee.

PIVARNIK, Justice.

On November 13, 1978, defendant-appellant Tyrone Douglas Lyda was found guilty

by a jury in Lake Superior Court, Criminal Division, of robbery, class B, Ind.Code (Burns 1979 Repl.) § 35–42–5–1. He was sentenced to twenty years imprisonment. Appellant Lyda presents six issues for our review, concerning: (1) whether the trial court erred in denying defendant's motions for directed verdict based on insufficient evidence; (2) alleged improper comments by the prosecuting attorney during closing arguments; (3) whether the trial court erred in prohibiting defendant's counsel from referring in his closing argument to the fact that the juvenile accomplice of defendant was given probation for his part in the crime; (4) whether the trial court erred in refusing to give defendant's tendered instruction number two; (5) whether the trial court erred in sentencing appellant; and (6) whether the trial court erred in allowing the trial to proceed with the defendant attired in jail clothing.

On the evening of April 17, 1978, a man entered the Ribordy Drug Store in Hammond, Indiana, and asked for a package of cigarettes. Renee Rybecki was on duty as a cashier that night, and Edwin Zabinski was working as a stock boy. After Renee handed the cigarettes to the man, he pushed a paper bag toward her and demanded the money from the cash register. He told her to give him the money because he had a gun, and he made a gesture toward his trousers, indicating he had a gun concealed there. Shortly after the robbery, the police began a chase of a car matching the description of the car used by the robber and an accomplice, who had waited in the car for him. The car was eventually stopped by the police, and the pursuit continued on foot. After the police ordered the suspect to halt and fired warning shots into the air, the suspect fired a gun at police. The police then returned fire and wounded the suspect. When they approached him they found a gun lying near him. He was identified by both Rybecki and Zabinski as the defendant, Lyda.

I.

Appellant was charged with and convicted of class B robbery. Ind.Code (Burns 1979 Repl.) § 35–42–5–1 defines this crime as follows: "A person who knowingly or intentionally takes property from another person or from the presence of another person: 1) by using or threatening the use of force on any person; or 2) by putting any person in fear; commits robbery, a class C felony. However, the offense is a class B felony if it is committed while armed with a deadly weapon." Appellant contends the evidence was insufficient to find him guilty of the class B felony, because both of the eyewitnesses testified that appellant did not produce, show, or display a deadly weapon. Appellant contends that, at most, the State proved a class C robbery under the above statute.

The overruling of a motion for a directed verdict at the close of all of the evidence is error only if there is an absence of any evidence on some essential issue, or if the evidence is without conflict and is susceptible to but one inference, which is in favor of the accused. *Mendez v. State*, (1977) Ind., 367 N.E.2d 1081, 1084; *Bash v. State*, (1970) 254 Ind. 671, 674, 262 N.E.2d 386, 388. Renee Rybecki, the cashier, testified that appellant demanded money and told her that he had a gun. He then made motions as though he were going to pull something from the pocket of his trousers. Edwin Zabinski testified that although he did not see a gun, his observations and appellant's action indicated appellant might have had a gun. Both Rybecki and Zabinski acted on his representation that he was armed and obeyed his commands. A short time later, during pursuit, appellant exchanged gunfire with the police, and a gun was recovered near his fallen body. Clearly there was not an absence of any evidence tending to prove appellant was armed while he was in the drug store. Further, the inferences which may be drawn are not exclusively in favor of appellant. The trial court, accordingly, properly overruled appellant's motions for a directed verdict.

II.

Appellant complains that he was unduly prejudiced by several remarks made by

the prosecuting attorney during closing arguments. With respect to several of the comments, appellant did not file timely objections at trial, and therefore did not preserve the issues for review on appeal. Appellant has waived any error predicated upon arguments to which he failed to interpose a timely and proper objection. *Womack v. State*, (1978) Ind., 382 N.E.2d 939, 940; *Maldonado v. State*, (1976) 265 Ind. 492, 497–98, 355 N.E.2d 843, 848.

At one point in his final argument, the prosecutor made reference to the victims of crime, asserting that most people have difficulty in empathizing with victims of crime, since most people don't like to think about crime if it hasn't been inflicted on them personally. Defense counsel objected to this remark, stating that it was improper. The court overruled the objection and the prosecutor continued without further objection. The objection simply stated that the remark was improper, and did not specify why it was improper or how it harmed appellant. A general objection, stating no specific grounds, is properly overruled, and the trial court was justified in doing so here. *Dorsey v. State*, (1976) Ind.App., 357 N.E.2d 280, 284; *Winston v. State*, (1975) 165 Ind.App. 369, 372, 332 N.E.2d 229, 231.

During the rebuttal portion of the prosecutor's final argument, he made the following comment:

"Counsel alludes to the fact, well, why he didn't bring that other person. I suppose if it wasn't him or why we didn't bring his mother to prove that he wasn't home that night. The point is that who is he friends with? Me, the police, I doubt it. The State has the power of the court to bring in witnesses. The defendant has the same power to bring in witnesses."

Record at 359–60. At this point the appellant objected "to the reference by the prosecution to subpoena power of the defense. It's a direct reference to the fact that the defendant has to prove something; that reference that the defendant should prove something." The trial court overruled this objection.

Appellant now claims it was prejudicial error for the court to overrule the objection to the prosecutor's statements, particularly since the court did not order the statements stricken or admonish the jury to disregard them. He claims these remarks were prejudicial for two reasons: one, they implied the defendant was required to prove something; and two, they improperly referred to the failure of the defendant to testify in his own behalf. As the record reveals, the objection regarding the alleged reference to the defendant's failure to testify was not raised at trial and therefore is not available on appeal. However, we will consider the issue on the grounds raised by the defendant at trial and presented here.

Appellant argues that this remark infers that the defendant was required to prove something in the trial. Of course, in appellant's trial, he bore no burden of proof on any matter. The record shows that during final argument, appellant's counsel raised the question of the failure of the State to call the accomplice driver as a witness. He argued that the State did not call all of the witnesses they could have to prove the issues they were bound to prove. He stated to the jury that one of the persons who might have direct knowledge of whether or not the defendant had a gun when he went into the store would be the driver of the car, and that the failure of the State to call that person could be taken as an indication that that person's testimony would be unfavorable to the State. Therefore, he argued, the jury could assume from his absence that he would not have testified in a way that the State wanted him to.

The State contends that the prosecutor's remarks were made to rebut the theory advanced in defendant's argument, and to negate the inference that the accomplice's testimony would be harmful to the State's case. It appears that the trial court interpreted the remarks consistent with this contention, because the defendant's objection was overruled. Considered in view of all the surrounding circumstances involved here, it does not appear that the comment

was designed to so arouse the passions of the jury as to place the defendant in a position of grave peril. *Rock v. State,* (1979) Ind., 388 N.E.2d 533, 536; *Maldonado v. State,* supra. A statement which may be otherwise objectionable may be justified by the fact that it was invited or provoked by counsel for the defendant. *Garrett v. State,* (1973) 157 Ind.App. 426, 436, 300 N.E.2d 696, 702. *See Henderson v. United States,* (6th Cir. 1955) 218 F.2d 14, *cert. denied,* 349 U.S. 920, 75 S.Ct. 660, 99 L.Ed. 1253, *reh. denied,* 349 U.S. 969, 75 S.Ct. 879, 99 L.Ed. 1290. It does not appear that appellant was prejudiced by this remark of the prosecutor.

■ During his final argument, the prosecutor made a reference to the attitude and appearance of the police witnesses.

"By the same token, you see a police chase on television and it kind of gets hardened to things. Well, certainly police that's their duty to duck bullets, but in reality a very dangerous thing, not started by these officers.

. . . . .

This is a difficult thing. I hope that when you see this case come in that you do appreciate this. That the apprehension of a dangerous person is a dangerous situation in itself. You see these police, and they testify if they appear mad you know when they do this. . . ."

Record at 328. Appellant objected to these comments on the ground that they had nothing to do with the crime charged. The trial court overruled this objection. The State contends the credibility of the witnesses was at issue, and the comments were intended to discuss with the jury the appearance or demeanor of police officers as it affected their credibility. The statements were made to explain the appearance of these witnesses and to dispel any belief that the witnesses were biased and not testifying accurately.

The jury must evaluate the credibility of the witnesses in reaching their verdict. Generally, trial courts instruct juries that they are the sole judges of the credibility of witnesses and, among other things, have a right to consider the appearance of the witnesses as they testify. This, then, is a legitimate area for counsel to cover in final argument, and this reference by the prosecutor to the police officer's testimony was fair comment.

### III.

■ During closing argument, defense counsel attempted to discuss the fact that defendant's accomplice was tried in juvenile court and placed on probation. There was evidence from a State's witness on cross-examination that the accomplice was not charged in adult criminal court. The witness stated that the companion received probation from juvenile court for his role in the robbery. The prosecuting attorney objected to this testimony and the trial court admonished the jury to disregard it. During final argument, the prosecutor discussed the seriousness of robbery and asked the jury to find this defendant guilty of a Class B felony, which carried up to twenty years imprisonment. The defendant now claims he should have been allowed to comment on the fate of the juvenile accomplice in response and rebuttal to the State's argument.

The court properly restricted counsel from commenting on this issue. The only function of the jury in this case was to determine the guilt or innocence of the accused. The judge and not the jury was charged with setting the punishment. Ind. Code (Burns 1979 Repl.) § 35–50–1–1. The disposition of the juvenile accomplice's case was a judicial determination irrelevant to the considerations that this jury had before it. It would have been improper for this jury to speculate on any effect the juvenile court's determination might have had on the guilt or innocence of appellant Lyda. There was no error here.

### IV.

Defendant tendered final instruction number two, which read:

"A defendant is a competent witness to testify in his own behalf and he may

testify in his own behalf or not as he may choose. In this case, the defendant has not testified in his own behalf and this fact is not to be considered by the jury as evidence of guilt, neither has the jury any right to comment upon, refer to, or in any manner consider the fact that the defendant did not testify in arriving at the verdict in this case."

Record at 67. The defendant agreed to waive any right he had and any error the court might commit by giving the instruction.

The trial court refused to give the tendered instruction, but did give, among others, the following instruction:

"Under the law of this State, you must presume that the defendant is innocent. You must continue to believe he is innocent throughout the trial unless the State proves that the defendant is guilty beyond a reasonable doubt of each essential element of the crime charged. Since the defendant is presumed innocent, he is not required to present any evidence to prove his innocence or to prove or explain anything."

Record at 60. Appellant contends the trial court's instruction did not cover the entire substance of the law, as defendant's tendered instruction number two did. He states that the court's instruction does not require the jury to refrain from drawing any negative inferences from the defendant's silence.

This Court held in *Davis v. State,* (1976) 265 Ind. 476, 355 N.E.2d 836, that in considering whether any error results from the refusal of a tendered instruction, the court must determine: whether the instruction correctly states the law; whether there is evidence in the record to support the giving of the instruction; and whether the substance of the tendered instruction is covered by other instructions which are given. Appellant's position is well taken, in that all three criteria are present in this case.

No reason was given by the trial court for refusing to give this instruction. Defendant's failure to take the stand was not specifically brought to the jury's atten-

tion in any prejudicial manner during the trial. Further, the record shows that defense counsel discussed this issue in final argument and informed the jury as to their obligations and the law, in a manner consistent with the wording of the tendered instructions. It is our opinion that the trial judge should have given this instruction under the circumstances presented here. The trial court's instruction number twelve, above, did not completely cover the area sought by defendant's tendered instruction number two. However, we cannot say in this case that the court committed reversible error by refusing to give the instruction. There was very strong direct evidence that the defendant committed this crime. As pointed out above, several eyewitnesses involved in the incident identified the defendant and implicated him in the acts necessary to make him guilty as charged. We think, therefore, that it is clear beyond a reasonable doubt that the jury did not convict the defendant because of a misunderstanding of the law due to the absence of this instruction. Likewise, we do not believe their judgment would have been different had this instruction been given. Therefore, we are not inclined to reverse the trial court on this issue.

V.

Appellant Lyda asks us to review the sentence imposed by the trial judge on two grounds. First, he claims the trial court abused its discretion in sentencing him to the maximum term of twenty years for Class B robbery, when the court had the discretion to sentence him to a determinate term of from six to twenty years. Second, he contends the trial judge erred in basing the sentence on the defendant's "score" on a felony sentencing worksheet.

In addition to giving the trial judge the discretion to impose a sentence of from six to twenty years, the statute provides that he give reasons in the sentencing judgment for the amount of time he assesses. The court here imposed the maximum twenty years, and listed the following reasons: the defendant had recently violated the condi-

tions of parole; the defendant has a history of criminal activity; the defendant is in need of correctional or rehabilitative treatment that can best be provided by his commitment to a penal facility; and the imposition of a reduced or suspended sentence would depreciate the seriousness of the crime.

Appellant's contention is that the trial court abused its discretion in giving him the maximum sentence. He claims there was a lack of substantial evidence on the question of whether he was armed with a deadly weapon at the time of the commission of the robbery. His appraisal is that the evidence supports, at most, Class C robbery, which does not require that the perpetrator be armed with a deadly weapon. We have already found in Issue I above that there was sufficient evidence to justify the jury's finding that the defendant was armed during the commission of this robbery. The trial court was, therefore, justified in using the sentencing range pertaining to Class B felonies, as provided for by the legislature. As set out above, the court had valid reasons for making its decision, and we cannot say that the sentence is "manifestly unreasonable in light of the nature of the offense and the character of the offender." Ind.R.App.Rev.Sen. 2(1); *McNew v. State,* (1979) Ind., 391 N.E.2d 607; *Dodson v. State,* (1978) Ind. 381 N.E.2d 90, 93.

Appellant also alleges the trial court used improper criteria in sentencing him, in that the trial judge relied on a "worksheet" to determine the sentence to impose. The worksheet employed by him was entitled *Sentencing Guidelines,* and was distributed by the Indiana Judicial Center and based on sentencing criteria developed by the Ohio Bar Foundation. It is a suggested aid to a trial judge in determining whether his sentencing judgments are uniform and consistent. The method employed involved charting the crime by giving points for different circumstances found in the commission of the crime. A second score is charted for the offender, in an attempt to reach a total score that gives a suggested sentence range based on all pertinent factors present in the case. Although the trial judge indicated that he had used this worksheet to arrive at a sentencing range for the defendant, he did not indicate that this was the sole means employed to determine the sentence. The judge stated that he read the pre-sentence investigation report, and noted that the offense rating and offender rating of the defendant indicated that his score "takes it well off the end of the chart." The factors used in the scoring worksheets are the same factors the court would use in determining the sentence. This worksheet merely graphically gave numerical values to the appropriate factors, and served to demonstrate to the judge that his sentence was consistent, under the law and the facts, with sentences imposed in other cases under similar circumstances. Numerical values are reduced where there are mitigating circumstances and increased where there are aggravating circumstances.

There has been no demonstration to the Court that the trial court used improper grounds for sentencing the defendant. Further, appellant has not shown that the reasons the court gave for imposing the maximum sentence were not set out in the statute as proper grounds for making the assessment. As the State points out, the trial court's determination was based upon a pre-sentencing report, and the aggravating circumstances were set out. The aggravating circumstances considered matched those found in the statute. Therefore, the trial court was in compliance with the statutory procedure for sentencing. Ind.Code (Burns 1979 Repl.) § 35–50–1A–7(c)(1)–(4); *Gardner v. State,* (1979) Ind., 388 N.E.2d 513, 518–19. We therefore see no grounds for revising the sentencing in this case.

## VI.

Finally, appellant Lyda claims the trial court erred in allowing the trial to proceed, over the objections of defense counsel, with Lyda attired in jail clothing. The State argues that the defendant was not compelled to wear his jail clothing, but chose to do so rather than wear his own civilian clothing, because his own clothing

had a noticeable hole and was bloody and dirty. The only evidence in the record of defendant's objections are contained in affidavits filed by defendant in his motion to correct errors. These affidavits, from the deputy prosecuting attorney and defense counsel, indicate the trial judge had a discussion with counsel before trial and out of the presence of the jury, in which defense counsel raised his objection to being tried in jail clothing. The affidavits further indicate that defendant Lyda had civilian clothes available to him but did not wish to wear them in court because of their condition. At the hearing on the motion to correct errors, the defendant admitted that he was not forced to appear in jail attire, but that he made the decision to wear the jail clothing rather than his civilian clothing because of their condition.

In *Estelle v. Williams,* (1976) 425 U.S. 501, 96 S.Ct. 1691, 48 L.Ed.2d 126, the Supreme Court of the United States held that it was reversible error for a state to compel a person to be tried in identifiable prison clothing. Here the record clearly shows that the defendant was not compelled by the trial court to wear jail attire. The defendant had the option. He chose not to wear his regular civilian clothes because of the condition they were in, but he does not claim that other clothing was not available to him for trial. Defendant did not assert to the trial court or here on appeal that because of his economic condition he was unable to obtain any other clothing and was therefore forced to wear the jail attire. Furthermore, the trial court here admonished the jurors not to consider defendant's clothing or appearance in their deliberations. We therefore do not feel that defendant has demonstrated reversible error on this issue.

The judgment of the trial court is affirmed.

All Justices concur.