Willard Wayne LUCAS, Appellant
(Defendant Below),

v.

STATE of Indiana, Appellee
(Plaintiff Below).

No. 779S176.

Supreme Court of Indiana.

Dec. 18, 1980.
Rehearing Denied March 5, 1981.

Michael A. Howard, Smith, Pearce & Howard, Noblesville, for appellant.

Theodore L. Sendak, Atty. Gen., Thomas D. Quigley, Deputy Atty. Gen., Indianapolis, for appellee.

PRENTICE, Justice.

Defendant (Appellant) was indicted for Count I, Murder in the First Degree, Ind. Code § 35–13–4–1 (Burns 1975) and Count II, Kidnapping, Ind.Code § 35–1–55–1 (Burns 1975). After trial by jury he was convicted upon both counts and sentenced to life imprisonment. This direct appeal presents the following issues:

(1) Whether or not the trial court erred in admitting incriminating statements made by the defendant during police interrogation.

(2) Whether or not the trial court erred in admitting evidence obtained as a result of the aforementioned statements made by the defendant during police interrogation.

(3) Whether or not the trial court erred in admitting into evidence the defendant's clothing; no proper chain of custody having been established.

(4) Whether or not the trial court erred in admitting a sample of the defendant's blood into evidence; no proper chain of custody having been established.

(5) Whether or not the trial court erred in allowing a witness to testify how he was previously acquainted with the defendant.

(6) Whether or not the trial court erred in refusing the defendant's tendered instruction regarding his right to remain silent.

\* \* \* \* \* \*

## ISSUE I

On August 8, 1977 at about 11:00 a. m., Captain Harold Trees of the Hancock County Sheriff's Department was dispatched to the scene of an automobile accident on Meridian Road just north of U. S. 40. At the scene he found a badly damaged Triumph sports car. He checked with headquarters to establish the ownership of the vehicle and learned that it belonged to Betty Dye. He saw a lady's brown handbag in the automobile. It contained credit cards and Betty Dye's driver's license. He requested the radio operator to check with the local hospital to determine if anyone had recently been admitted. Upon receiving a negative response, he proceeded towards Betty Dye's residence, which was nearby. Enroute, he passed a barnyard and observed a white Chevrolet automobile departing from that area.

The barns in the yard were known to Trees as the scene of an alleged battery and rape of Betty Dye, for which the defendant had been charged and released on bond.

As the Chevrolet departed Trees did not then recognize the driver. He followed the vehicle until it crossed State Road 13 in violation of a stop sign. Trees signaled the driver to stop, which he did.

The defendant got out of his automobile, whereupon Trees noticed that the vehicle's fender was damaged. He then recognized the defendant and suspected that he had been involved in an accident with Betty Dye. He told him that Mrs. Dye had been involved in a wreck and asked if he had seen or knew anything of her whereabouts. The defendant answered, "She is all right." Trees repeated the question and the defendant again responded, "She is all right." Then Trees said, "Don't lie to me Willard. If she's hurt I want to help her." The defendant again stated, "She is all right." Trees then said, "I think you're lying to me, what happened to your front fender? Did

you run her off the road?" The defendant answered, "Yes."

Trees then asked the defendant what he was doing back at the barn, and he answered that he was watching to see if she got home all right. Trees said, "Betty's back at the barn, isn't she?" And, the defendant answered, "yes."

Trees told the defendant to lock his automobile and accompany him back to the barn to see how badly Betty Dye was hurt. They returned to the barns together and while enroute, Trees asked, "how bad is she hurt." The defendant responded that it was pretty bad. Trees then asked how bad, and the defendant said, "Let's hurry, maybe she's not dead yet."

Trees drove to one barn, and the defendant advised him to go to the other. He opened the door and saw the body of the victim lying in a pool of blood. Trees and the defendant approached the body, and the defendant kneeled, laid his head on the victim's shoulder, and cried, "Betty I'm sorry, I'm sorry I killed you."

The defendant contends that his responses to Trees' questioning were admitted into evidence in violation of *Miranda v. Arizona*, (1966) 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694.

Trees gave the defendant no warnings concerning his right to remain silent or his right to counsel. The defendant contends that he was subject to custodial interrogation of an accusatory nature and that he was the focus of a criminal investigation.

The record does not bear out these assertions. The unrefuted testimony of Trees discloses that he was investigating an automobile accident in which the defendant apparently was involved. He had received no report of a crime. At no time, until he discovered the body of the victim, did he suspect any foul play. His concern was for injuries which Betty Dye may have received in an automobile accident.

The defendant does not dispute that *Miranda* warnings are required only prior to custodial interrogation. *Oregon v. Mathiason*, (1977) 429 U.S. 492, 494–95, 97 S.Ct.

711, 713–14, 50 L.Ed.2d 714, 719 (per curiam). The record discloses that the defendant was free to leave Captain Trees, if he wished, until the time that the body of the victim was discovered. We cannot characterize as custodial that interrogation which occurred at a time prior to Captain Trees' having become aware that a crime had been committed. *Oregon v. Mathiason, supra.*

The record shows that the statement made by the defendant, while his head lay on the victim's shoulder, was spontaneous and not made in response to any questioning. *Jennings v. State*, (1974) 262 Ind. 476, 482, 318 N.E.2d 358, 361; *Moore v. State*, (1973) 260 Ind. 154, 155, 293 N.E.2d 28, 29. We find no error in the trial court's admission of the defendant's statements.

## ISSUE II

The defendant contends that the trial court erred in admitting into evidence some thirteen exhibits, which were either photographs taken at the scene or items recovered there. He asserts that the police found this evidence as a result of Captain Trees' allegedly illegal questioning of the defendant and were, therefore, fruit of the poisoned tree. In Issue I above, however, we determined that the tree was not poisoned, hence there is no basis for Defendant's argument upon this issue.

## ISSUE III

Over objection of the defendant, the trial court admitted into evidence the white shirt and blue trousers which were taken from the defendant at the time he was booked at the police station. Both garments contained spots of blood of the same type as the victim's blood. The defendant contends that no proper chain of custody was shown.

The shirt and trousers were placed in a plastic bag and left in the booking room which was unattended for fifteen to twenty minutes while Officer Johnson placed the defendant in the cellblock. Officer Johnson had tied the bag in a knot and initialed it. The officer then placed the bag in an un-

locked closet, where all the clothes of persons arrested were placed. The closet is located in a room not accessible to the public. The bag remained there unattended for up to two hours, while Officer Johnson took film to the scene of the crime. From there, he was sent back to the station to retrieve the bag, which he found in the same condition as it was when he had left it. He returned to the scene and turned the bag over to Officer Hollingsworth, who took it to Officer Kuhn and requested that tests for blood type be performed, which Kuhn did.

■ The defendant recognizes that our rule requiring that the chain of custody be established before exhibits are admitted into evidence applies with diminishing strictness as the exhibits concerned become decreasingly susceptible to alteration, tampering or substitution. *Coleman v. State*, (1975) 264 Ind. 64, 69, 339 N.E.2d 51, 55. However, he apparently urges us to remove the blood spots from the clothing and treat them as a fungible commodity, in which event a more strict compliance would be required.

At trial the arresting officer, Captain Trees, identified the shirt and trousers as the garments that the defendant was wearing on the day of the crime. Additionally Officer Johnson testified that the bag containing the shirt and trousers appeared undisturbed when he retrieved it from the closet. The defendant made no claim that the exhibits had been tampered with.

■ Our decisions do not require a strict showing of the chain of custody, where as here, the exhibit is nonfungible, and a witness identifies it. *Proctor v. State*, (1979) Ind., 397 N.E.2d 980, 982 (shotgun identified by victim); *Wolfe v. State*, (1978) 270 Ind. ——, ——, 383 N.E.2d 317, 318 (Officer identified gun used by defendant); *Teague v. State*, (1978) 269 Ind. 103, 113–14, 379 N.E.2d 418, 423 (coroner identified shirt he removed from body of deceased); *Johnson v. State*, (1977) 267 Ind. 415, 421, 370 N.E.2d 892, 894–95 (knife identified by officer who removed it from the scene); *Gaddis v. State*, (1977) 267 Ind. 100,

108, 368 N.E.2d 244, 249 (defendant's shirt identified by victim of robbery and arresting officer). That these garments contained blood spots made it all the easier to distinguish them from any other white shirt and blue trousers. We find no error in the admission of this evidence.

## ISSUE IV

Over Defendant's objection the trial court admitted into evidence a clear plastic bag, which contained a cardboard mailer tube, which, in turn, contained a manilla envelope, which contained a vial, which contained a sample of the defendant's blood. The defendant contends that no proper chain of custody was shown, because the envelope and plastic bag were not sealed at all times and thus were susceptible to tampering.

The record, however, discloses a proper showing of the chain of custody. Officer Paul Weiler testified that he was present when the blood sample was taken from the defendant by a Dr. Lanning in Noblesville. Officer Weiler delivered the sample to Officer Kuhn at the State Police Laboratory in Indianapolis. Officer Kuhn performed tests on the sample to determine the blood type. The results of the test were used to show that the blood on the defendant's clothes was not his own.

■ To demonstrate the admissibility of a fungible item such as blood, we require " * * * a foundation (to) be laid connecting the exhibit with the defendant and showing the continuous whereabouts of the exhibit from the time it came into the possession of the police until it was laboratory tested. The purpose of the rule is to avoid any claim of substitution, tampering or mistake." *Jones v. State*, (1973) 260 Ind. 463, 466, 296 N.E.2d 407, 409; *State v. Vance*, (1979) Hawaii, 602 P.2d 933, 942.

■ The evidence here shows no breaks in the chain of custody and no suggestion of tampering. The trial court properly admitted the blood sample. *People v. Vandiver*, (1976) 191 Colo. 263, 268, 552 P.2d 6, 10; *State v. Malmay*, (1975) La., 315 So.2d 286,

287; *Geary v. State,* (1975) 91 Nev. 784, 794, 544 P.2d 417, 423–24; *Commonwealth v. Williams,* (1974) 458 Pa. 319, 323, 326 A.2d 300, 302.

### ISSUE V

On direct examination of Officer Trees, the following occurred:

"Q. Okay, how to you know this person to be Wayne Lucas?

MICHAEL J. TOSICK: I'll object Judge, that would be immaterial.

THE COURT: It'll be overruled.

"A. I knew Mr. Lucas upon being incarcerated in jail prior to this incident."

The defendant did not testify, and he charges that the officer's answer was an improper disclosure to the jury of his prior incarceration and possible criminal involvement.

 As the quoted portion of the record shows, this contention of prejudice was not presented to the trial court. "A party cannot change or add to his objections or the grounds thereof in the reviewing court." *Cooper v. State,* (1972) 259 Ind. 107, 111, 284 N.E.2d 799, 801. The defendant is therefore confined to the grounds he raised, materiality. The objection of "Immaterial" in a trial court presents no question for review on appeal. *Graf v. State,* (1938) 213 Ind. 661, 663, 14 N.E.2d 103, 104; *See O'Conner v. State,* (1980) Ind., 399 N.E.2d 364, 366 (cases cited therein).

### ISSUE VI

The defendant contends that the trial court erred in refusing to give the following tendered instruction:

"No reasonable inference of guilt may arise from the defendant's refusal to take the stand and no undue penalty may be placed upon the free exercise of the defendant's right to remain silent."

Although the tendered instruction is a correct statement of the law, it is not well articulated as an instruction. The statement was taken from *Jones v. State,* (1978) 267 Ind. 680, 686, 372 N.E.2d 1182, 1185, but it was addressed to the reader, not to the jury, as an instruction. We have held that if requested, a defendant is entitled to an instruction advising that the jury should not consider his failure to testify. *See Hill v. State,* (1978) 267 Ind. 480, 485, 371 N.E.2d 1303, 1306; *Gross v. State,* (1974) 261 Ind. 489, 491, 306 N.E.2d 371, 372.[1] However, such an instruction should be carefully drawn so as to impart only the information that the defendant has a constitutional right to refrain from testifying and that no inference should be drawn from his election to exercise that right. As tendered, the instruction invited speculation as to what inferences could be drawn and what penalties could be attached. It, therefore, had a potential to harm the defendant and was properly refused.

The error assigned in refusing the tendered instruction is also subject to being disregarded as harmless, beyond a reasonable doubt. In view of the overwhelming direct and circumstantial evidence of Defendant's guilt, as hereinbefore related, " * * * it is clear beyond a reasonable doubt that the jury did not convict the defendant because of a misunderstanding of the law due to the absence of this instruction." *Lyda v. State,* (1979) Ind., 395 N.E.2d 776, 781.

We find no reversible error. The judgment of the trial court is affirmed.

GIVAN, C. J., and DeBRULER, HUNTER and PIVARNIK, JJ., concur.

---

1. In this respect we adopt the Federal rule on this issue. *Bruno v. United States,* (1939) 308 U.S. 287, 60 S.Ct. 198, 84 L.Ed. 257; *United States v. Schabert,* (2nd Cir. 1966) 362 F.2d 369, 372, *cert. denied,* (1966) 385 U.S. 919, 87 S.Ct. 230, 17 L.Ed.2d 143; *United States v. English,* (3rd Cir. 1969) 409 F.2d 200, 201 (per curiam); *United States v. Smith,* (4th Cir. 1968) 392 F.2d 302 (per curiam).