**Yesse Lee BROWN, Appellant**
**(Defendant Below),**

v.

**STATE of Indiana, Appellee.**

No. 2–881A283.

Court of Appeals of Indiana,
Second District.

March 17, 1983.

Rehearing Denied April 12, 1983.

---

1. Ind.Code § 35–42–5–1 (Burns 1979 Repl.).

Christopher C. Zoeller, Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Kathleen G. Lucas, Deputy Atty. Gen., Indianapolis, for appellee.

SULLIVAN, Judge.

Defendant-Appellant Yesse Lee Brown (hereinafter referred to as "Brown") appeals his jury trial conviction of Involuntary Manslaughter, I.C. 35–42–1–4 (West Ann.Code 1978). Brown was sentenced to five years.

In view of our disposition, the sole issue addressed is whether the trial court committed reversible error by refusing the following jury instruction requested by Brown:

> "During the trial of this cause the Defendant has not testified. You are not to speculate upon the Defendant's reasons for not testifying, nor in any manner utilize this fact in reaching your verdict."

The facts most favorable to the State disclose that on the afternoon of January 20, 1979, the victim, George Brown (hereinafter referred to as "George") was at the home of his sister, Betty Wallace, with his wife and two children. Brown, brother to both George and Betty Wallace, arrived at the house accompanied by his nephew, Steve Brown.

George was sitting in the dining room when Brown came up to him with his right hand in his pocket. Brown pointed his finger at George and said, "You owe me money, boy, and I want it." George said, "I don't want to hear it," stood up, and struck Brown with one open-handed blow.

Both Betty Wallace and Steve Brown, who were in the dining room, attempted to

intervene as Brown and George wrestled. By the time Betty got around the table, Brown had stabbed George, although no one saw the actual stabbing. Betty grabbed Brown's arm, saw a knife, and screamed for Steve to recover the weapon. Steve grabbed Brown's arm, hit it against the wall, and took the knife. George fell into the kitchen, bleeding profusely. By the time emergency medical personnel arrived some minutes later, George had died as a result of the single stab wound in his lower left chest.

Although Brown did not testify at the trial, there was some testimony tending to show that George was the aggressor throughout the episode and that Brown had stabbed George in self-defense. George was more than a head taller than Brown and weighed more. In addition, Brown had recently suffered extensive burns to his left arm in an industrial accident, and movement in the arm was substantially restricted. Steve Brown testified that, after George slapped Brown, Brown just looked at George. George then grabbed Brown, pushed him into the kitchen over the stove, and hit Brown two more times with his open hand. Brown pushed George away from him into the doorway. Then Betty came around the table, got between them and pushed them both back. Brown took the knife from his pocket. As Steve tried to get around the table, George went toward Brown again. Brown stabbed George at that point.

After his conviction for involuntary manslaughter, Brown filed a timely motion to correct errors which was overruled. The praecipe for the record, however, was not timely filed. Nevertheless, we granted Brown permission to file a belated appeal pursuant to Ind.Rules of Procedure, Post-Conviction Remedies Rule 2(2).

Brown argues that the trial judge's refusal of his tendered jury instruction violated his fifth amendment privilege against self-incrimination. The trial judge, in refusing the instruction, said: "We have mentioned that in our voir dire and our other instructions also." Record at 638.

In considering whether error results from refusal of a tendered instruction we must determine: (1) whether the tendered instruction correctly states the law, (2) whether there is evidence in the record to support it, and (3) whether the substance of the tendered instruction is covered by other instructions which are given. *Davis v. State* (1976), 265 Ind. 476, 355 N.E.2d 836.

Brown's position is well-taken. The recent United States Supreme Court decision in *Carter v. Kentucky* (1981) 450 U.S. 288, 101 S.Ct. 1112, 67 L.Ed.2d 241, requires the trial court to honor a request by a defendant for a cautionary instruction in order to comport with the defendant's fifth amendment privilege against self-incrimination. In *Carter* the Court stated:

"In *Bruno [v. United States,* 60 S.Ct. 198], the Court declared that the failure to instruct as requested was not a mere 'technical erro[r] ... which do[es] not affect ... substantial rights....' It stated that the 'right of an accused to insist on' the privilege to remain silent is '[o]f a very different order of importance ...' from the 'mere etiquette of trials and ... the formalities and minutiae of procedure.' 308 U.S. [287], at 293–294, 60 S.Ct. [198], at 200 [84 L.Ed. 257]. Thus, while the *Bruno* Court relied on the authority of a federal statute, it is plain that its opinion was influenced by the absolute constitutional guarantee against compulsory self-incrimination.

[*Griffin v. California* (1965) 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106] ... stands for the proposition that a defendant must pay no court-imposed price for the exercise of his constitutional privilege not to testify. The penalty was exacted in *Griffin* by adverse comment on the defendant's silence; the penalty may be just as severe when there is no adverse comment, but when the jury is left to roam at large with only its untutored instincts to guide it, to draw from the defendant's silence broad inferences of guilt. Even without adverse comment, the members of a jury, unless instructed otherwise, may well draw adverse inferences from a defendant's silence.

. . . .

A trial judge has a powerful tool at his disposal to protect the constitutional privilege—the jury instruction—and he has an affirmative constitutional obligation to use that tool when a defendant seeks its employment. No judge can prevent jurors from speculating about why a defendant stands mute in the face of a criminal accusation, but a judge can, and must, if requested to do so, use the unique power of the jury instruction to reduce that speculation to a minimum." 450 U.S. at 300–03, 101 S.Ct. at 1119–20 (footnotes omitted).

Significantly, the Court also noted:

"The other trial instructions and arguments of counsel that the petitioner's jurors heard at the trial of this case were no substitute for the explicit instruction that the petitioner's lawyer requested. Although the jury was instructed that '[t]he law presumes a defendant to be innocent,' it may be doubted that this instruction contributed in a significant way to the juror's proper understanding of the petitioner's failure to testify." *Id.* at 304, 101 S.Ct. at 1121.

In the case at bar, we have no record of the trial court's statements during voir dire. None of the jury instructions, however, touched explicitly on the effect of the defendant's failure to testify. As in *Carter,* "we cannot say that the jury would not have derived 'significant additional guidance,' from the instruction requested." *Id.* (citation omitted).

*Carter* was decided after the trial in this cause. Some courts in other states have discussed whether *Carter* should be applied retroactively. *See, e.g., State v. Fanning* (1982) 1 Ohio St.3d 19, 437 N.E.2d 583; *Mack v. State* (Okl.Cr.App.1982) 641 P.2d 1122. Indiana by statute and by decisional precedent, however, has long recognized the trial court's duty to give a "no adverse inference" instruction upon the defendant's request. *See* I.C. 35–1–31–3 (West Ann. Code 1978) (repealed Acts 1981, P.L. 298). *See also Reed v. State* (1982) Ind., 438 N.E.2d 704; *Parker v. State* (1981) Ind., 425 N.E.2d 628; *Lucas v. State* (1980) Ind., 413 N.E.2d 578; *Lyda v. State* (1979) Ind., 395 N.E.2d 776; *Smith v. State* (1968) 250 Ind. 125, 235 N.E.2d 177. Carter does not change the law in Indiana; rather it provides constitutional underpinning to our established law.

■ Our determination that the trial court erred in refusing Brown's tendered instruction does not end our inquiry. Neither *Carter* nor our prior case law requires automatic reversal for such error. The *Carter* Court expressly declined to address the question of automatic reversal because the State had failed to raise the harmless error argument below. 450 U.S. at 304, 101 S.Ct. at 1121. The Court noted only that it was "arguable" that refusal to give a requested "no adverse inference" jury instruction could never be harmless. *Id.* In the past, our courts have held such an error harmless when there was very strong direct evidence of guilt and it was "clear beyond a reasonable doubt that the jury did not convict the defendant because of a misunderstanding of the law due to the absence of this instruction." *Lyda v. State* (1979) Ind., 395 N.E.2d 776, 781. We believe the harmless error doctrine still governs the resolution of this issue.

■ We recognize that the presence of federal constitutional error requires application of the federal harmless error standard. *McDonald v. State* (1st Dist.1975) 164 Ind.App. 285, 328 N.E.2d 436. Nonetheless, the harmless error doctrine as applied by the United States Supreme Court to federal constitutional error does not differ from the standard applied in *Lyda v. State, supra.* The federal standard requires reversal unless the court on appeal can determine as a matter of law that the error was harmless beyond a reasonable doubt under the circumstances of the case. *Chapman v. California* (1967) 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705. *See also McDonald v. State, supra.* As the Court stated in *Chapman:* "[T]hese [harmless error] rules, state or federal, ... block setting aside convictions for small errors or defects that have little, if any, likelihood of having changed the result of the trial." 386 U.S. at 22, 87 S.Ct. at 827.

In the case at bar, the question of harmless error is a close one. Although all the evidence points to the conclusion that Brown killed his brother, there is also evidence from which the trier of fact might reasonably conclude that he was justified in using deadly force because he reasonably believed that force was necessary to prevent serious bodily injury to himself. *See* I.C. 35–41–3–2 (West Ann.Ed.1978). Such a belief could lie only within the mind of the defendant, yet he never took the stand to explain his actions or to announce his claim of self-defense.[1] As noted in *Carter,* jurors "can be expected to notice a defendant's failure to testify, and, without limiting instruction, to speculate about incriminating inferences from a defendant's silence." 450 U.S. at 304, 101 S.Ct. at 1121.

It is especially difficult to erase the probable effect on the jury of the defendant's failure to testify when, as here, the one person who knows most about the critical facts in his defense is the accused. It would have been entirely logical for the jurors to speculate why the defendant, if he were claiming self-defense, did not take the stand to say so. It is entirely possible that, because they were not instructed otherwise, the jurors took his silence as "a clear confession of crime." *Lakeside v. Oregon* (1978) 435 U.S. 333, 340 n. 10, 98 S.Ct. 1091, 1095 n. 10, 55 L.Ed.2d 319 (quoting 8 Wigmore, Evidence § 2272, p. 426 (McNaughton rev. ed. 1961)). The situation is analogous to that in *Carter* where the identification evidence was weak and not all the evidence pointed to the guilt of the defendant. 450 U.S. at 291, 101 S.Ct. at 1114.

Under these circumstances, it is impossible for us to say that the State has demonstrated, beyond a reasonable doubt, that the trial court's refusal to give the instruction did not contribute to Brown's conviction.

The judgment is reversed. The case is remanded to the trial court for further proceedings not inconsistent with this opinion.

SHIELDS, J., concurs.

BUCHANAN, C.J., dissents and files separate opinion.

BUCHANAN, Chief Judge, dissenting.

I must respectfully dissent.

It is my conclusion that the trial court's refusal to give the requested instruction as to the Defendant Brown's failure to take the stand was harmless error in view of the overwhelming evidence of Brown's guilt.[1]

The error is harmless if "it is clear beyond a reasonable doubt that the jury did not convict the defendant because of a misunderstanding of the law due to the absence of this instruction. Likewise, [we will not reverse if] we do not believe their judgment would have been different had this instruction been given." *Lyda v. State,* (1979) Ind., 395 N.E.2d 776, 781. *See also Parker v. State,* (1981) Ind., 425 N.E.2d 628; *Lucas v. State,* (1981) Ind., 413 N.E.2d 578.

The record reveals that the two eyewitnesses—Betty Wallace and Steve Brown—gave essentially the same testimony as to what transpired on the day in question. Both eyewitnesses testified that the confrontation began with a verbal assault by the defendant, Yesse Brown (Brown), which was followed by one open-handed blow from the decedent, George Brown (George). The remainder of their testimony varied only slightly. Betty claimed that she immediately placed herself between the two brothers in order to stop the confrontation; however, the fatal stab wound had already been delivered. *Record* at 261. Steve claimed that there was a short scuffle between the two men before Betty interceded

---

1. The reason Brown did not testify may have been the same as in *Carter:* had he done so, the State could have impeached his propensity to tell the truth with his prior felony convictions. *See* 450 U.S. at 293 n. 4, 101 S.Ct. at 1115 n. 4.

1. I agree with the majority that *Carter v. Kentucky,* (1981) 450 U.S. 288, 101 S.Ct. 1112, 67 L.Ed.2d 241, does not alter existing Indiana law, which holds that refusal to give a requested "no adverse inference" jury instruction can be harmless error. A careful analysis of the concurring and dissenting opinions in the *Carter* case reveals that a majority of the Court would probably find that failure to give the requested instruction is not fundamental error.

and the fatal stab wound was delivered. *Record* at 389. Neither of these scenarios would provide evidence from which the trier of fact could reasonably have concluded that Brown was justified in using deadly force because he reasonably believed that force was necessary to prevent serious bodily injury to himself. IC 35–41–3–2 (1978). *See Sanders v. State,* (1981) Ind., 428 N.E.2d 23; *Loyd v. State,* (1980) Ind., 398 N.E.2d 1260, *cert. denied,* 449 U.S. 881, 101 S.Ct. 231, 66 L.Ed.2d 105.

As a part of his self-defense argument, Brown contended that the victim was a much larger man and that Brown had recently suffered a work-related accident which caused permanent damage to his left arm. The physical evidence presented in the record conflicts with the testimony given as to the height and weight of the victim and the defendant. The police report, *record* at 435, shows that the victim was five foot six and weighed 140 pounds at the time of death while Brown's mugshot, *record* at 497, establishes that he was five foot eight and weighed 134 pounds on the day in question. It cannot be said, on the basis of this evidence, that the victim was a substantially larger man than Brown. Furthermore, although Brown suffered severe damage to his left arm, this would not justify the use of deadly force to counter one open-handed blow.

So, I do not find even a whit of evidence in the record which would support the defendant's self-defense argument. Failure to give the requested instruction was harmless error because it is clear beyond a reasonable doubt that the result in this case would have been the same even if the instruction had been given.[2]

I would affirm the decision of the trial court.

2. Because I would affirm, I must also address the other arguments raised by the appellant. First, appellant assails the absence of an instruction detailing the essential elements of involuntary manslaughter. This argument has been waived because no allegation of error appeared in the motion to correct error. Ind. Rules of Procedure, Trial Rule 59(G); *Morris v. State,* (1979) Ind., 384 N.E.2d 1022. Appellant's second argument is that there was insufficient evidence to sustain his conviction.

Keeping in mind that when reviewing for sufficient evidence we will neither reweigh the evidence nor judge the credibility of witnesses and consider only the evidence most favorable to the State along with all reasonable and logical inferences to be drawn therefrom, the testimony of two eyewitnesses who viewed the fatal confrontation was clearly sufficient to uphold the verdict in this case. *See Oatts v. State,* (1982) Ind., 437 N.E.2d 463.