## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Sep 28 2017, 8:55 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Stephen T. Owens
Public Defender of Indiana

John Pinnow
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

George P. Sherman
Deputy Attorney General
Indianapolis, Indiana

# I N T H E
# COURT OF APPEALS OF INDIANA

Paula Lynn Tackett,
*Appellant-Defendant,*

v.

State of Indiana,
*Appellee-Plaintiff.*

September 28, 2017

Court of Appeals Case No.
35A02-1704-PC-888

Appeal from the Huntington
Superior Court

The Honorable Jeffrey R.
Heffelfinger, Judge Pro Tem

Trial Court Cause No.
35D01-1309-PC-14

**Najam, Judge.**

# Statement of the Case

Paula Tackett appeals from the post-conviction court's denial of her petition for post-conviction relief. Tackett raises two issues for our review:

1. Whether she was denied the effective assistance of trial counsel.

2. Whether she was denied the effective assistance of appellate counsel.

We affirm.

# Facts and Procedural History

The facts underlying Tackett's convictions were stated by this court on direct appeal:

> On October 25, 2011, a family case manager for the Huntington County department of child services investigated allegations of a minor child being left home alone and the manufacture and use of methamphetamine by the minor's parents. When the family case manager arrived at the residence, she found a note pinned on the front door which read "Don't bother Knocking[.] Junior has left town and [S.T.] is not having company. Please Don't Disturb. Go Away." (State's Ex. No. 2). Although there were lights on inside the house, a television was playing, and dogs were barking, no one opened the door. The following day, the family case manager received a phone call from Tackett, informing the case manager that she and her minor child, S.T., were at a hotel about an hour away.
>
> Meanwhile, police had obtained a search warrant for the residence. During the search, police officers discovered several of the ingredients used to manufacture methamphetamine,

including lye, used cold medicine packs, a baggie containing lithium strips, tubing, and several bottles which had been used as generators and reaction vessels. Based on the number of reactionary vessels located, the officers determined that eight separate meth labs had been created inside the residence. The officers also found mail addressed to Tackett.

On October 28, 2011, Indiana State Police Detective Shane Jones (Detective Jones) interviewed Tackett. Tackett admitted that her husband, Raymond Tackett, Jr. (Raymond) manufactured methamphetamine because they needed money. They lived together in the residence and Tackett had witnessed Raymond cooking methamphetamine in the house. She stated that she had purchased lye for Raymond at a local hardware store which he had used to manufacture methamphetamine. Detective Jones also reviewed the pharmacy log of the local Wal-Mart, which showed that Tackett had purchased pseudoephedrine on September 18, 2011, October 7, 2011, and October 22, 2011.

On October 28, 2011, the State filed an Information charging Tackett with Count I, dealing in methamphetamine, [as] a Class A felony, Ind. Code § 35-48-1-1(b)(3)(B)(ii). On March 28, 2011, the State amended the charging Information and added Count II, conspiracy to commit dealing, [as] a Class B felony, I.C. §§ 35-41-5-2; 48-4-1.1(b)(3)(B)(iii). On April 18 through April 19, 2012, the trial court conducted a jury trial. At the close of the evidence, Tackett was found guilty as charged. On May 22, 2012, during a sentencing hearing, the trial court sentenced Tackett to thirty years on Count I and ten years on Count II, with sentences to run concurrently.

On May 23, 2012, Tackett filed a notice of appeal. On August 6, 2012, she filed a motion to stay appeal and remand, which we granted ten days later. On October 15, 2012, Tackett filed a motion to certify her statement of evidence in the trial court. This statement of evidence, verified by Tackett's trial counsel, noted that Tackett "wore a dark blue jail uniform on both days of

her trial, as she was in custody during the trial." (Appellant's App. p. 81C). The statement also indicated that "[t]here was no objection to this either on the record, at sidebar, in chambers, or at any other time during the course of this proceeding." (Appellant's App. p. 81C). On November 7, 2012, the trial court denied Tackett's motion to certify statement of evidence because "[t]he statement is not evidence and is an attempt by [Tackett] to certify allegations that are outside of the official record of the proceedings." (Appellant's App. p. 81E).

*Tackett v. State*, No. 35A05-1205-CR-267, 2013 WL 782404, at *1-*2 (Ind. Ct. App. Feb. 27, 2013) ("*Tackett I*").

[4] In her direct appeal, Tackett alleged that her sentence was inappropriate in light of the nature of the offenses and her character, and she challenged the trial court's denial of her motion to certify her statement of evidence. We affirmed her sentence and held that the trial court's denial of her motion to certify was not reviewable on appeal.

[5] In her petition for post-conviction relief, Tackett alleged that she was denied the effective assistance of both trial and appellate counsel. After an evidentiary hearing, the post-conviction court entered detailed and well-reasoned findings of fact and conclusions of law denying her petition for relief. This appeal ensued.

## Discussion and Decision

[6] Tackett appeals the post-conviction court's denial of her petition for post-conviction relief. Our standard of review is clear:

The petitioner in a post-conviction proceeding bears the burden of establishing grounds for relief by a preponderance of the evidence. *Fisher v. State*, 810 N.E.2d 674, 679 (Ind. 2004) (citations omitted). When appealing the denial of post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment. *Id.* To prevail on appeal from the denial of post-conviction relief, a petitioner must show that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. *Weatherford v. State*, 619 N.E.2d 915, 917 (Ind. 1993). Further, the post-conviction court in this case made findings of fact and conclusions of law in accordance with Indiana Post-Conviction Rule 1(6). Although we do not defer to the post-conviction court's legal conclusions, "[a] post-conviction court's findings and judgment will be reversed only upon a showing of clear error—that which leaves us with a definite and firm conviction that a mistake has been made." *Ben-Yisrayl v. State*, 729 N.E.2d 102, 106 (Ind. 2000) (internal quotation omitted).

*Campbell v. State*, 19 N.E.3d 271, 273-74 (Ind. 2014) (alteration original to *Campbell*).

### Issue One: Effectiveness of Trial Counsel

[7] Tackett first argues that she received ineffective assistance from her trial counsel:

When evaluating an ineffective assistance of counsel claim, we apply the two-part test articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). *See Helton v. State*, 907 N.E.2d 1020, 1023 (Ind. 2009). To satisfy the first prong, "the defendant must show deficient performance: representation that fell below an objective standard of reasonableness, committing errors so serious that the defendant did not have the 'counsel' guaranteed by the Sixth Amendment."

*McCary v. State*, 761 N.E.2d 389, 392 (Ind. 2002) (citing *Strickland*, 466 U.S. at 687-88, 104 S. Ct. 2052). To satisfy the second prong, "the defendant must show prejudice: a reasonable probability (i.e. a probability sufficient to undermine confidence in the outcome) that, but for counsel's errors, the result of the proceeding would have been different." *Id.* (citing *Strickland*, 466 U.S. at 694, 104 S. Ct. 2052).

*Id.* at 274.

[8] Tackett alleges that her trial counsel committed two errors, namely, his failure to object to Tackett being tried while wearing jail clothing and his failure to object to alleged hearsay. We address each contention in turn.

*Jail Clothing*

[9] In *Lyda v. State*, 395 N.E.2d 776, 783 (Ind. 1979), our Supreme Court held as follows:

> In *Estelle v. Williams*, (1976) 425 U.S. 501, 96 S. Ct. 1691, 48 L.Ed.2d 126, the Supreme Court of the United States held that it was reversible error for a state to compel a person to be tried in identifiable prison clothing. Here the record clearly shows that the defendant was not compelled by the trial court to wear jail attire. *The defendant had the option. He chose not to wear his regular civilian clothes because of the condition they were in, but he does not claim that other clothing was not available to him for trial.* Defendant did not assert to the trial court or here on appeal that because of his economic condition he was unable to obtain any other clothing and was therefore forced to wear the jail attire. Furthermore, the trial court here admonished the jurors not to consider defendant's clothing or appearance in their deliberations. We therefore do not feel that defendant has demonstrated reversible error on this issue.

(Emphasis added).

[10] Here, during trial, Tackett wore jail-issued clothing that consisted of a navy blue shirt with the letters "HCJ"[1] on the back and plain navy blue pants. The evidence shows that, one week before trial, Tackett's trial counsel instructed her to have someone get her clothes to wear at trial. The post-conviction court found that Tackett was unable to get anyone to bring her clothes to wear for trial, and the undisputed evidence shows that she had gained weight while in jail and could not fit into the jeans she had been wearing when she was arrested. But Tackett makes no contention that she could not have worn the shirt she was wearing at the time she was arrested or that it was unavailable to her. As the post-conviction court found, Tackett "could have worn the navy blue jail pants . . . with the shirt she had been arrested in." Appellant's App. Vol. 2 at 77. Tackett has not demonstrated that she was compelled to wear the navy blue shirt with the initials "HCJ" on the back of it during trial. And while the jail-issued shirt was arguably identifiable as jail garb, the plain navy blue pants were not. In light of that evidence, Tackett has not shown that she was compelled to wear the jail-issued clothing, and she has not shown reversible error. *See Lyda*, 395 N.E.2d at 783.

[11] Further, because Tackett admitted to Detective Shane Jones that she knew her husband had been manufacturing methamphetamine in their home and that she

_____

[1] HCJ stands for Huntington County Jail.

had purchased ingredients for him to use in that manufacture, the probable impact on the jury of the jail clothing was sufficiently minor so as not to affect her substantial rights, and any error was harmless. Ind. Appellate Rule 66. Tackett has not shown that she was prejudiced by her trial counsel's failure to object to her wearing jail clothing at trial. *See, e.g.*, *Brown v. State*, 24 N.E.3d 529, 534 (Ind. Ct. App. 2015) (holding defendant failed to show that defense counsel's deficient performance prejudiced him because the error was harmless in light of the other evidence presented at trial).

*Hearsay*

[12]    Tackett also contends that her trial counsel erred when he did not object to Detective Jones' testimony that a "person" had "reported there was manufacturing of methamphetamine going on" in Tackett's home. Trial Tr. Vol. 8 at 116. But, again, in light of Tackett's own admission that her husband was manufacturing methamphetamine in her home, Tackett cannot demonstrate that her trial counsel's failure to object to the alleged hearsay testimony was reversible error or otherwise prejudiced her. App. R. 66. Tackett has not demonstrated that she was denied the effective assistance of trial counsel.

## Issue Two: Effectiveness of Appellate Counsel

[13]    Tackett also contends that she was denied the effective assistance of appellate counsel when he failed to raise on direct appeal the issue of Tackett being tried in jail clothing. "Ineffectiveness is very rarely found" where a defendant alleges

deficient performance based on appellant counsel's failure to raise an issue on direct appeal. *Bieghler v. State*, 690 N.E.2d 188, 193 (Ind. 1997) (quotations and alteration omitted). Indeed, here, because we hold that Tackett has not demonstrated reversible error on the jail clothing issue, she cannot show that she was prejudiced when her appellate counsel did not raise the issue on direct appeal.

[14] Affirmed.

Kirsch, J., and Brown, J., concur.